Judge Ewing
delivered the Opinion of the Court.
An action of covenant was brought by Russell against Kendall, on an article of agreement, by which Russell bound himself to lay, for Kendall, on his new brick building, “as many brick as he may need, to complete said building;” for which, Kendall bound himself to pay eight dollars per thousand for each thousand brick which may be laid.
Three witnesses were introduced by the plaintiff, who stated that they were brick layers, and that it was the custom of the country to count all the openings in the building—doors, windows, chimneys &c. as solid work, and to be paid for accordingly.
A witness introduced by the defendant, proved that there had been considerable difficulty at Russellville, a neighboring town, as to measuring brick work, between the people and the brick layers; and of late years, they had settled down upon a compromise of the difficulty, upon the following terms, to-wit. that the openings should be included in paying for the labor of laying, and excluded in estimating the price of the material used,
A verdict having been found for the plaintiff, including the openings, in estimating the price for the materials, as well as for laying, and a motion for a new trial overruled, Kendall has brought the case to this Court.
The question involved is, whether the facts made out *502 in proof, should be permitted to control the stipulations of the covenant sued on, so as to sustain the verdict.
The intention of the parties to a contract, is the leading rule in their construction. To this paramount rule all others are subordinate. The parties should be bound for what they intended to be bound, and no more. The Courts will hold them bound to that extent, and no further, if that can be arrived at.
To hold any one bound further, would be to impose an obligation upon him, which he never assented to, or intended to. take upon himself, and would be the height of injustice and oppression.
A custom or usage of trade is only allowable, as one mean to arrive at the intention, never to thwart or control it. If the stipulations of a contract indicate an intention in the obligor variant from the usage, then should the stipulations prevail; otherwise an obligation may be imposed contrary to the intention, though provided against by the express terms of the contract.
Testing this case by these rules, two questions arise: first—does the obligation of Kendall indicate an intention to fix a rule for his liability .variant from the usage. Second. If it did not, was the proof of a custom such as to entitle it to the force of a general usage.
First. We think the stipulations of the contract are clear and explicit, and indicate clearly his intention as to the extent of his liability.
He first stipulates for as many brick as he may need to complete his building; and then binds himself to pay eight dollars a thousand, for each thousand brick that may be bid.
With these stipulations in his contract, can it be imagined that he intended to pay for a third, fourth, or half as many more brick as he needed, or for several thousand brick more than should be laid in his building. If he did not intend to do so, then the stipulations of his contract should not be so construed, as to impose the obligation upon him. These stipulations not only show an absence of intention to be bound to that extent, but also by any fair interpretation, to exclude the idea of an intention to be thus bound.
A usage of trade is not sufficiently proved when the witnesses speak only of “the custom of the country,” without stating how far, or how long, the custom has prevailed.
A usage or custom of trade, to be a guide in the construction of contracts, must he consistent, uniform, reasonable, and sufficiently ancient to be generally known.
The number of brick which he needed, he contracted for, and no more, and as many as he should get, he agreed to pay for.
It is difficult to conceive how he could be made to pay for more than he needed or got, consistent with his intention as expressed by the clear terms of his contract. Had he contracted to pay the customary price, or at the rate of eight dollars per thousand, without saying more, then perhaps the usage may have been resorted to, as the mean of ascertaining the intention of the parties, as to the terms of the contract. But the special stipulations, seem to indicate to us, a clear intention on the part of the obligor, to be bound only to pay for the numerical number of brick that might be needed, and be actually placed in the walls, and no more.
But if there were doubts on this point, it is certainly questionable whether the usage attempted to be made out in proof, should prevail.
The witnesses speak of its being a custom of the country: nothing is said of the extent of its prevalence, or of the length of time that it has existed.
Now to make a custom or usage of trade obligatory, it must be certain, uniform, reasonable, and sufficiently ancient to be generally known.
It must be certain and uniform to entitle it to respect, against the known rules of law for the construction of contracts.
It must be reasonable, to entitle it to any consideration; and sufficiently ancient to be generally known, or it might thwart, rather than carry into effect, the intention of the parties, or impose an obligation upon one which he never intended to take upon himself. American Com. Law Abridgment, 8th, 230. If not so ancient as, by intendment of law, to be generally known, if it could avail at all, it certainly should not do so, without it was brought home to the contracting obligor, by actual notice. Otherwise, it might be made an instrument in the hands of the craftsmen of the trade, to delude the unwary.
We cannot understand that the custom or usage was of sufficiently long standing, or general prevalence, as *504 to imply that Kendall had knowledge of it; nor was there any proof of express notice. And the fact that the citizens of a neighboring town resisted the claim on the part of the mechanics, and they had been compelled to abandon it, evidences that it was not universal, even in the same vicinity, nor regarded by a portion of the community as very reasonable.
The judgment of the Circuit Court is reversed, and cause remanded, that a new trial may be granted.