·Case 85.—ACTION BY THE CITY OF ·COVINGTON AGAINST THE KANAWHA COAL & COKE CO. FOR BREACH OF WRITTEN CONTRACT.—January 3.

## City of Covington v. Kanawha Coal & Coke Co.

Appeal from Kenton Circuit Court.

W. McD. SHAW Circuit Judge.

Judgment for defendant. Plaintiff appeals. Reversed.

1. Contracts—Breach—Delay in Delivery—Strikes—Customs—Explaining Writing—Appellee agreed, in writing, with appellant to furnish it coal of a certain kind from September 1, 1901, to September 1, 1902, at a named price per ton, but failed to comply with its contract, alleging that by reason of a strike in the district where the coal was to be had it could not be obtained, and pleaded that there was a general custom in the locality where the sale was made to the effect that the contract was made subject to a strike in said mining district, to which plea a demurrer was filed and overruled by the lower court, and upon this plea proof was heard and the jury found for the appellee. Held—There is nothing equivocal or obscure in the contract. The evidence does not interpret or explain, but contradicts what is written.

2. Contingencies—Must be in Writing—If a party agreeing to furnish coal at a named price desires to protect himself from the ·contingencies of strikes occurring in the district where his coal is to be obtained, it is incumbent on him to express the ·contingency in the contract, and if he fails to do so he can not show a custom that his written contract is not what it reads, but is only a conditional engagement.

F. J. HANLON, City· Solicitor for appellant.

POINTS AND AUTHORITIES CITED.

1. Unless a party to a contract, provides in the contract, "that he is not liable, in case he is prevented from performing said contract, by the existence of a 'strike," he can not plead such

"strike" in avoidance, and as an excuse for failure to perform said contract. (7th Am. & Eng. Enc. of Law, 2 Edition, pp. 148 and 149; Bunn, &c. v. Wm. Prather, &c., 21 Ill., 217; Bacon, &c. v. Cobb, 45 Ill., p. 47; Steele, &c. v. Buck, 61 Ill., p. 343; Harmony v. Bingham, &c., 12 N. Y., 192; Anderson v. May, 50 Minn., 280; Booth v. Spuyter Duyvill Rolling Mill Co., 60 N. Y., 918; Jemison v. McDaniel, &c., 25 Miss., 85; West v. The Uncle Sam, 29 Fed. Cas., p. 729.)

2. Oral Testimony is incompetent to vary the written contract sued on herein. (R., N. I. & B. R. R. Co. v. Richardson, 19 Ky. Law Rep., 1497; Linn v. East Eagle Turnpike Co., &c., 24 Ky. Law Rep., 978; Munford v. Green's Adm'r, 103 Ky., 140; Singer Mfg. Co. v. Wit, 26 Ky. Law Rep., 15; Harmon v. Thompson, 27 Ky. Law Rep., 185.)

3. The alleged custom does not control this contract. (Kendall v. Russell, 5 Dana, 501; 1 Greenleaf, Evidence, sec. 275; Wright v. Shelby R. R. Co., 16 B. Monroe, p. 6; Castleman v. Southern Mutual Life Ins. Co., 14 Bush, 202; Capital Gas & Electric Co. v. Gaines, 20 Ky. Law Rep., 1466.)

MARTIN M. DURRETT for appellee.

FRANK M. TRACY of Counsel.


POINTS AND AUTHORITIES.

1. A custom or usage, when applied to the modern usage of trade, is a part of every contract the subject matter of which it affects, unless expressly excluded therefrom by the parties to the contract. (27 Am. & Eng. Enc. Law, 1 Ed., 705, 712; Bouv. Law Dict., 462; 3 Salk., 112, Anderson's Abbott's and Burrill's Law Dict., sub. nom.; Walls v. Bailey, 49 N. Y., 464; Clarke's Brown on Usages & Customs, sec. 13; Goddin v. Shipley, 7 B. Mon., 579; Mills v. Bank U. S., 11 Wheat., 431; Foley v. Mason, 6 Md., 37; Schooner Reeside, 2 Sumn. [U. S.], 567; VanHoesen v. Cameron, 54 Mich., 609; Branch v. Palmer, 65 Ga., 210; McCluskey v. Closterman, 20 Oregon, 108; Lyon v. Culbertson, 83 Ill., 33; Masters v. Penn. R. Co., 65 Pa. St., 374; Wilcoks v. Phillips, 1 Wall., Jr. [U. S.], 63; Clark v. Baker, 11 Met., [Mass.], 188.)

2. When usage annexes incidents to a contract, it will be admitted, although the annexed incident may vary and change the written terms of the contract. (1 Greenl. on Eq., 15 Ed., sec., 294; Humfrey v. Dale, 7 El. & Bl., 266, 90 E. C. L., 265; Brown v. Byrne, 3 El. & Bl., 703, 77 E. C. L., 702; Florence Mach. Co. v. Daggett, 135 Mass., 582; Robinson v. U. S., 13 Wall., 363; Sweet v. Shumway, 102 Mass., 365; Brown Chemical Co. v. Atkinson, 91 N. C., 389; Finnie v. Clay, 2 Bibb., 352; Kendall v. Russell,

City of Covington v. Kanawha Coal & Coke Co.

5 Dana, 501; Wallace & Co. v. Bradshaw & Co., 6 Dana, 382; Houston, &c. v. Peters, Hardin & Co., 1 Met., 558; Capital Gas, &c., Co., v. Gaines, 20 Ky. Law Rep., 1464.)

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

The Kanawha Coal & Coke Company made a contract with the city of Covington to furnish it coal from September 1, 1901, to September 1, 1902. The contract was in writing and is as follows:

"Cincinnati, Ohio, Dec. 4, 1901.

"The Waterworks Commissioners, Covington, Ky. —Gentlemen: We hereby propose to furnish you with what coal you may require from September 1, 1901, to September 1, 1902, as follows: Acme nut and slack at $1.45. Kanawha nut and slack at $1.35. All per ton of 2,000 pounds. The grade of coal to be furnished as requested by the superintendent of the waterworks, and same to be delivered at Covington pumping station, Ft. Thomas, Ky.

"The Kanawha Coal & Coke Co.

"T. S. GARRISON, Prest.

"Accepted by waterworks commissioners Dec. 4, 1901.

"D. B. BAYLESS,
"HENRY BRINKER,
"W. S. NOCK."

The coal company failed to furnish the city with coal as provided in the contract, and the city had to buy coal at a higher price. On July 2, 1903, the city brought this suit against the coal company to recover damages for its failure to comply with its contract. The coal company pleaded that there was a general custom among merchants in relation to the subject-matter of the contract, which prevailed in Covington, Ky., Cincinnati, Ohio, and the vicinity, and controlled

such contracts, to the effect that the contract was made subject to a strike at the mines from which the coal contracted for was to be shipped, and all other causes beyond the seller's control whereby the seller would be prevented from obtaining the coal contracted for; that this custom was well known to the city, and it entered into the contract, agreeing that the custom should be a part of it; that the coal contracted for was to be obtained from coal mines in the State of West Virginia, in what is known as the "Kanawha District;" that on June 11, 1902, a general strike was declared and went into effect throughout the whole of the Kanawha district, rendering it impossible after that date for the defendant to obtain any of the coal contracted to plaintiff until the strike was ended on October 7, 1902; that the strike was wholly beyond its control; and that by reason of this alone it failed to furnish the coal. It also pleaded that the city recognizing the custom, and recognizing that the defendant was not bound to furnish it coal during the existence of the strike, paid it in full for all the coal it furnished, except one car, valued at $60, payment of which was refused on the ground that the coal was not received; that the city also requested it to purchase other coal for it in the open market; and that in accordance with this request it did during the continuance of the strike purchase for plaintiff a large amount of coal, which the city paid for without protest. The city demurred to this part of the answer. The demurrer was overruled.

Proof was introduced on the trial by the defendant tending to sustain the allegations of the answer, and at the conclusion of all the evidence the court instructed the jury that they should find for the plaintiff unless they believed from the evidence that there was

a general strike in the Kanawha coal district, by reason of which the defendant was unable to supply the coal, and that it was a custom or usage in the vicinity where the contract was made, among persons engaged in buying and selling coal in carload lots, that all contracts with reference thereto are made subject to strikes beyond the control of the parties selling the coal, and that in this event the defendant was excused from carrying out its contract and they should find for it. The jury found for the defendant, and the city appeals.

The rule as to the admission of usage or custom to interpret or explain written contracts is thus stated in 2 Greenleaf on Evidence, Sec. 292: "Proof of usage is admitted, either to interpret the meaning of the language of the contract, or to ascertain the nature and extent of the contract, in the absence of express stipulations, and where the meaning is equivocal and obscure. Thus, upon a contract for a year's service, as it does not in terms bind the party for every day in the year, parol evidence is admissible to show a usage for servants to have certain holidays for themselves. So, where the contract was for performance as an actor in a theater for three years at a certain sum per week, parol evidence was held admissible to show that according to uniform theatrical usage the actor was to be paid only during the theatrical season, namely, during the time while the theater was open for performance in each of those years." Again, in section 294, it is said that parol evidence or usage or custom is admissible to annex incidents or to show what things are to be treated as incidental to the principal thing which is the subject of the contract. Then this language is used: "This evidence is admitted on the principle that the parties did not intend to express in writing

the whole of the contract by which they were to be bound, but only to make their contract with reference to the known and established usages and customs relating to the subject matter.   But in all cases of this sort the rule for admitting the evidence of usage or custom must be taken with this qualification: that the evidence be not repugnant to, or inconsistent with, the contract; for otherwise it would not go to interpret and explain, but to contradict, that which is written.   This rule does not add new terms to the contract, which, as has already been shown, can not be done; but it shows the full extent and meaning of those which are contained in the instrument.''

In the case at bar there is nothing equivocal or obscure in the contract.   The evidence offered does not show that any word in the contract was employed in a sense different from its usual or natural meaning.   The evidence does not annex an incident to the contract, within the proper meaning of this term. The contract on its face obligates the coal company absolutely to furnish the city with all the coal it may require, as requested by the superintendent of the waterworks, at the price named in the contract.   The evidence offered, if admitted, was in effect that there was not an absolute contract to furnish the coal, but only a conditional engagement to furnish it, provided the coal company was not prevented from doing so by strikes, or other causes beyond its control, which disabled it from getting the coal from the coal district.   This evidence is repugnant to and adds new terms to the contract.   It does not go to interpret or explain, but to contradict, what is written.   If the party entering into a contract of this sort desires to protect himself against contingencies, it is incumbent on him to express the contingency in his contract; and

if he fails to do this, in the absence of fraud or mistake, he can not show a custom to the effect that his absolute written contract is not what it reads, but only a conditional engagement.

In Finnie v. Clay, 2 Bibb, 352, this court held that a patent must be run out according to the direction of the magnetic needle, and not according to the true meridian. The evidence that by custom the magnetic needle was always used and referred to simply showed what the parties meant by the terms they employed. In other words, the evidence was admitted to show what the parties meant by the words "north" and "south." But there is no difficulty of that kind in the contract here. See, also, to same effect, Rochester German Insurance Company v. Peaslee-Gaulbert Company, 120 Ky., 752, 87 S. W., 115, 27 Ky. Law Rep., 1155. In Kendall v. Russell, 5 Dana, 501, 30 Am. Dec., 696, Russell bound himself to lay for Kendall, brick at $8 a thousand. Russell contended that by a custom the openings in the wall were to be counted as though filled with brick. The court held that the actual number of brick laid controlled, on the ground that the stipulations of the contract were clear and explicit, and could not be varied by proof of custom, by which an obligation would be imposed contrary to the express terms of the contract. The principles announced in this case were followed in Castleman v. Southern Mutual Life Insurance Company, 14 Bush, 197, and Capital Gas & Electric Company v. Gaines, 49 S. W., 462, 20 Ky. Law Rep., 1466.

In Insurance Company v. Wright, 1 Wall., 456, 17 L. Ed., 505, the United States Supreme Court, after stating that a written contract can not be controlled by usage or custom, as this would be to allow mere implication to vary or contradict the deliberate written declarations of the parties, adds: "No usage

can be incorporated into a contract which is inconsistent with the terms of the contract." In Tilley v. Chicago, 13 Otto, 155, 26 L. Ed., 374, the court thus states the rule: "Proof of usage can only be received to show the intention or understanding of the parties in the absence of a special agreement or to explain the terms of the written contract (citing authorities). In all cases where evidence of usage is received, the rule must be taken with this qualification: that the evidence be not repugnant to or inconsistent with the contract." In the subsequent case of Grace v. Insurance Company, 109 U. S., 278, 3 Sup. Ct., 207, 27 L. Ed., 932, the court, after restating the rule, adds this: "This rule is based upon the theory that the parties, if aware of any usage or custom relating to the subject matter of their negotiations, have so expressed their intention as to take the contract out of the operation of any rules established by mere usage or custom."

Where for any reason the parties have, by mistake, not correctly stated their contract in writing, upon an allegation and proof of mistake, the truth may be shown, and the real contract enforced. But in the absence of fraud or mistake, when the parties have deliberately put their engagement in writing, expressed in terms clear and unequivocal, proof of a custom to vary or contradict the writing can not be received.

Judgment reversed, and cause remanded, with directions to sustain the demurrer to the answer and for further proceedings consistent herewith.