FLOYD G. SCHAEFER, TRADING AS F. G. SCHAEFER IRON WORKS, PLAINTIFF-RESPONDENT, v. BRUNSWICK LAUNDRY, INCORPORATED, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 22, 1935—Decided January 31, 1936.

For the defendant-appellant, *Paul C. Supinski* and *John Francis Gough.*

For the plaintiff-respondent, *Hopkins, Vorburger & Dickson.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered on the verdict of a jury in the New Jersey Supreme Court.

Bergen Circuit, in favor of the plaintiff, Schaefer, and against the defendant, Brunswick Laundry, Incorporated, hereinafter called the Laundry Company, in the amount of $3,349.64.

On August 27th, 1929, the Laundry Company entered into a written contract with Nicholas D'Elia, trading as the D'Elia Contracting Company, hereinafter called the general contractor, for the construction of a power plant. This contract provided, *inter alia,* that if the general contractor defaulted, the Laundry Company would have a right to complete the contract and hold the general contractor liable for any loss occurring by reason of such default. It was further provided that the work be completed within sixteen weeks, with a stipulation of $50 liquidated damages for each day elapsing between the appointed and actual time of completion.

On August 28th, 1929, the general contractor entered into a written subcontract with the plaintiff, Schaefer, for the erection of all structural steel work as required for the power plant. The subcontract provided that if Schaefer defaulted, the general contractor would have a right to complete the structural steel work and hold Schaefer liable for any loss occurring by reason of the default. If for any reason an extension of time for performance was desired by Schaefer, the same would be determined only upon request made in accordance with the terms of the subcontract. Final payment was to be made to Schaefer by the general contractor sixty days after satisfactory completion of the general contract.

For the purpose of performing his work, Schaefer rented certain equipment for use until the job was completed. The work continued until January 10th, 1930, when a strike occurred among the employes of Schaefer, and work was discontinued for a period of approximately nine weeks. During this time Schaefer was obliged to pay rent for the equipment and other sums to insure its safe keeping.

A meeting was called to adjust differences and was attended by Schaefer, the general contractor, Henry Sieminski (general manager of the Laundry Company), and certain representatives of the union of the strikers. As a result of lengthy discussion the strike was called off, but Schaefer refused to

continue performance unless he was paid for the rentals and charges accruing during the time of the strike. There was testimony (which was controverted) that Sieminski then orally promised to pay this amount, and instructed Schaefer to submit his bill to the architect to be checked.

The work was completed under the written contracts, and upon refusal of the Laundry Company to pay the rentals and charges, as above, this action was started by Schaefer against the Laundry Company and D'Elia, or in the alternative, Sieminski and D'Elia. A nonsuit as to D'Elia was entered before trial, and a nonsuit as to Sieminski was entered during the course of the trial, it being stipulated that Sieminski was acting as agent for the Laundry Company.

The complaint sought recovery not only on the oral promise or contract of Sieminski, but also on the theory that the Laundry Company was responsible for the strike. This latter ground was discarded at the trial, and no attempt made to allocate the blame for the strike. The jury returned a verdict for Schaefer on the oral promise, and from the judgment entered thereon this appeal is taken.

The Laundry Company raises generally four grounds of appeal, attacking the admission of certain evidence and the refusal of motions for nonsuit and directed verdict.

It is first contended that the trial court erred in admitting in evidence the subcontract between D'Elia and Schaefer, to which the Laundry Company was not a party. This contract was admissible, and appears to have been offered, to show the relationship of the parties. *Wallace* v. *Kennelly*, 47 *N. J. L.* 242. Since no attempt was made to hold the Laundry Company responsible for the strike, the admission of the subcontract in evidence was not reversible error from this standpoint.

It is next contended that the oral promise was that of Sieminski, and not the Laundry Company. This, a mere question of agency, was admitted at the trial, and a nonsuit entered as to Sieminski upon the stipulation that he acted as representative of the Laundry Company.

The third ground of appeal is based on the theory that the oral contract was in truth a promise to pay the debt of

another, and therefore no action could be based nor testimony introduced thereon because of the statute of frauds. At the time of this oral promise, however, the amount involved was a loss that had accrued to Schaefer outside of his written subcontract, and had not attained the character of a debt owed by any person. The oral contract of Sieminski was the first, and of necessity an original promise to pay the loss. The inapplicability of the statute of frauds to such a situation is apparent. *Helfield* v. *Dow,* 27 *N. J. L.* 440; *Fitzgerald Spear Co.* v. *Kelly,* 81 *Id.* 6; *affirmed,* 83 *Id.* 626.

The fourth general ground of appeal, raised at the trial as a reason for nonsuit, is that there was no consideration for the oral promise or contract of the Laundry Company.

It should be first noted as a distinguishing feature of this case that the bill submitted by Schaefer involved in the litigated contract arose not from performance, but during a period of non-performance of the subcontract. The Laundry Company did not underwrite the subcontract price for performance, but by its promise assumed a loss occasioned by a non-performance for which Schaefer had no legal excuse.

There is no evidence or intimation that the general contractor had defaulted, thereby relieving Schaefer of his contractual obligations. Nor was the existence of the strike any excuse for non-performance of these contractual obligations, there being no express stipulation in the written subcontract to that effect. *Covington* v. *Kanawha Coal, &c., Co.,* 121 *Ky.* 681; 89 *S. W. Rep.* 1126; *Morse Dry Dock Co.* v. *Seaboard Transportation Co.,* 154 *Fed. Rep.* 90; *Neblett* v. *McGraw* (1907), 46 *Tex. Civ. App.* 201; 103 *S. W. Rep.* 1113; *Hexter* v. *Knox,* 39 *N. Y. Sup. Ct.* 109; *affirmed,* 63 *N. Y.* 561.

Generally, impossibility of performance offers no relief from the performance of contractual obligations, whether the impossibility could or could not have been foreseen at the time of the making of the contract. *Middlesex Water Co.* v. *Knappmann Whiting Co.,* 64 *N. J. L.* 240. There are three exceptions to this rule: (1) where the impossibility arises by operation of law (*Vanderbilt* v. *Little,* 51 *Id.* 289); (2) where a thing necessary to performance is destroyed

(*Matthews Const. Co.* v. *Brady,* 104 *Id.* 438) ; (3) where the contract calls for personal services, and the party to perform or receive performance dies (*Victory* v. *Union County Trust Co.,* 4 *N. J. Mis. R.* 908). The instant case falls within none of these exceptions, and the statement from *Hess* v. *Tube Zone Realty Co.,* 94 *N. J. L.* 4, is peculiarly applicable : "The contract being express to do a thing not in itself unlawful, the defendant was under an obligation to perform it, notwithstanding the fact that the cost of performance would have been very much greater than it anticipated at the time it made the contract."

Since neither the Laundry Company nor the general contractor appear responsible for the strike, and the resultant loss, this was a burden falling upon Schaefer, with no relief therefrom being provided by his contract. It follows, therefore, that during the time that the rentals and charges here concerned were accruing, Schaefer continued to be under a duty to perform his contractual obligations, of which the said rentals and charges were a necessary incident. He did not even avail himself of his contract to the extent of making a request for an extended time to perform.

"A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration." *Durant* v. *Block,* 113 *N. J. L.* 509. This is true, though the existing obligation is owed to a third person, and the promisor is a stranger to the contract whereby the obligation arose. *Moore* v. *Kuster,* 238 *Ky.* 292; 37 *S. W. Rep.* (2d) 863; *Havana Press-Drill Co.* v. *Ashurst,* 148 *Ill.* 115; 35 *N. E. Rep.* 873; *Harris* v. *Cassady,* 107 *Ind.* 158; 8 *N. E. Rep.* 29; *Arend* v. *Smith,* 151 *N. Y.* 502; 45 *N. E. Rep.* 872.

But the Laundry Company cannot wholly be considered a stranger to the subcontract of Schaefer, since it was obviously made to further performance of the general contract, and the final payment to Schaefer was conditioned upon the satisfactory completion of the general contract. Moreover,

the ultimate result of the default clauses in the two written contracts would be that the Laundry Company could perform Schaefer's work and hold him responsible for any resultant loss.

It follows, therefore, and we conclude that there was no consideration for the oral promise upon which this litigation is founded. The natural interest of the Laundry Company is early completion of the power plant, and the fact that the promise induced Schaefer to perform does not affect this conclusion. Schaefer was, and had been for the preceding nine weeks, under a duty to so perform.

Several cases in other states have held that a promise made by the owner to a subcontractor, inducing performance, was supported by consideration. *Grant* v. *Duluth, &c., Railroad Co.*, 61 *Minn.* 395; 63 *N. W. Rep.* 1026; *Lindsly* v. *Kansas City Viaduct, &c., Co.*, 152 *Mo. A.* 221; 133 *S. W. Rep.* 389; *Reisler* v. *Silbermintz*, 99 *App. Div.* 131; 90 *N. Y. S.* 967; *Guaranty Iron and Steel Co.* v. *Leyden*, 235 *Ill. App.* 191. The condition in each of these cases is that the general contractor had breached his contract, relieving the subcontractor from further performance of his original contractual obligation. On the other hand, in a case where no breach by the general contractor appears, as here, it was decided that there was no consideration for a similar promise by the owner to a subcontractor. *Snyder* v. *Monroe Eckstein Brewing Co.*, 95 *N. Y. S.* 144; *affirmed*, 188 *N. Y.* 576; 80 *N. E. Rep.* 1120.

There being no consideration for the oral contract upon which the judgment here on review was based, the trial court erred in not granting the motion for nonsuit when made, and the judgment is therefore reversed.

*For affirmance*—THE CHANCELLOR, PERSKIE, JJ. 2.

*For reversal*—THE CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 11.