ROBERT L. FERMAN & COMPANY, Incorporated, Plaintiff,

v.

GENERAL MAGNAPLATE CORPORATION, Defendant.

Civ. A. No. 1004-62.

United States District Court
D. New Jersey.

Aug. 30, 1963.

and declaring the rights, duties, status and legal relations of the parties thereto." A bona fide controversy upon which the defendant predicates its right to invoke the declaratory judgments law is alleged in the counterclaim to exist between the plaintiff, the defendant, and Casper Rogers Co., a co-underwriter with the plaintiff, named in and who (with the other parties named) executed the agreement in suit. The defendant affirmatively pleaded that Casper Rogers Co. is an indispensable or necessary party to the action, and that no relief can be granted therein without the joinder of that party.

Plaintiff duly noticed a motion for an order adding Casper Rogers Co. Inc. as an involuntary party plaintiff pursuant to F.R.Civ.P. 19(a) or, in the alternative, for an order striking the separate defense which asserts the indispensability of that party. Plaintiff moves also for an order for summary judgment in its favor (and Rogers', if joined), pursuant to the provisions of F.R.Civ.P. 56(a). At the conclusion of the oral argument upon the plaintiff's motions, the Court reserved decision.

Shoenholz & Shoenholz, Newark, N. J., for plaintiff, Milton Shoenholz, Newark, N. J., and Mortimer Wolf (New York Bar), of counsel.

Lum, Biunno & Tompkins, Newark, N. J., for defendant, by Theodore L. Abeles, Newark, N. J.

**WORTENDYKE, District Judge.**

This case invokes the Court's diversity jurisdiction conferred by 28 U.S.C. § 1332(a) (1). The plaintiff is a corporation of the State of Florida and the defendant a corporation of the State of New Jersey. The involvement of the statutorily required minimum amount is alleged and presumptively provable.

The action is for damages for the alleged breach of a written underwriting agreement dated July 9, 1959 (a request for specific performance was withdrawn on plaintiff's motion for summary judgment). To its answer, admitting the agreement but denying its liability for the causes alleged in the complaint, the defendant has annexed a counterclaim for a declaratory judgment "construing and interpreting the * * * agreement

The written Underwiting Agreement (hereafter "Agreement") in suit is before the Court as an uncontested exhibit annexed to an affidavit submitted in behalf of the plaintiff in support of its motion for summary judgment. By the terms of the agreement, Robert L. Ferman & Co. Inc., (Ferman) of Miami, Florida, and Casper Rogers Co. (Rogers or the Rogers Company) of New York City, are employed by the defendant, therein and hereinafter referred to as "Company", as defendant's exclusive agent, referred to in the agreement (and herein) as "Underwriter", for the sale of certain securities of Company to the public, at a stated price per share. Pursuant to a separate agreement (not part of the record but undisputed by the parties), the principal stockholders of Company sold 7,500 shares of its stock to Ferman and Rogers at a price of $0.01

per share, this so-called "cheap stock" constituting additional compensation to the Underwriter. (These shares were later increased by a 4% stock dividend to 7,800 shares, Ferman holding 5,720 and Rogers 2,080 shares.) With respect to these shares sold to the Underwriters, article 12(c) of the Agreement provides as follows:

"(c) At the expiration of thirteen months from the effective date [August 14, 1959], the Company agrees that it will, upon written request, use its best efforts to obtain an exemption of 12,500 shares of the Common Stock of the Company (which includes 7,500 shares sold to the Underwriter by the Principal Stockholders) from the registration requirement of the Securities Act of 1933, as amended, and if it is impossible or impracticable for any reason to obtain an exemption from registration for such shares, the Company will, upon written request, use its best efforts to cause said shares to be registered under the Securities Act of 1933, as amended; and all expenses in connection with the obtaining of such exemption or in connection with such registration, as the case may be, will be paid for by the Company. If the first such request to the Company shall cover less than all of such 12,500 shares and the exemption or registration so requested shall be obtained, the Company shall not be obligated to take any action thereafter to obtain any exemption or registration for any additional portion of such 12,500 shares."

The complaint alleges that pursuant to the Offering Circular, dated August 14, 1959, all of the 75,000 shares of stock of Company were sold to the public, and the net proceeds thereof were delivered to the defendant. This the defendant admits. It also admits that 7,500 shares

of Company's stock (later increased to 7,800 shares) were sold to the plaintiff and Rogers by defendant's principal stockholders, and that the defendant agreed in section 12(c) above, to use its best efforts to obtain exemption of those shares from the registration requirements of the Securities Act of 1933, as amended (hereinafter Act), and that, if impossible or impracticable for any reason to obtain such exemption, to use its best efforts to cause those shares to be registered under the Act and to pay all expenses in connection with such exemption or registration. Defendant, however, avers that its aforesaid undertakings were subject to the implied condition that plaintiff and Rogers "would be and remain free of any conduct, status or disqualification that would interfere with, hamper or render more difficult or expensive the defendant's best efforts." It is the defendant's further allegation that although it was requested in writing to use, and did use, its best efforts to secure exemption from registration for the 7,800 shares, defendant was unable to obtain exemption "at that time because of the institution or pendency of various proceedings for injunction and other relief brought against said Casper Rogers Co. by officials or agencies of the United States of America having jurisdiction thereof." Defendant asserts that it has stood ready to use its best efforts to cause the shares to be registered under the Act if registration should be necessary, but contends that it is not obliged to incur the expense thereof because of the failure to comply with the implied condition hereinabove referred to.[1]

■ In support of the foregoing allegations, the defendant argues that Rogers' involvement with the S.E.C. breached an implied condition of the agreement, which discharged defendant of its obligation to cause the stock to be registered at its expense, because there was implied

---

1. All other affirmative defenses not referred to above, were abandoned by defendant on its argument opposing the motion for summary judgment.

in the agreement a condition that neither underwriter would prevent or hinder defendant's performance of either of its obligations under section 12(c). Defendant contends that Rogers' own conduct caused its difficulties with the S.E.C., and that those difficulties caused the S.E.C. to disallow defendant's application for exemption of the shares. Therefore, says defendant, Rogers prevented the granting of the exemption, and thus rendered impossible defendant's performance of its obligation to secure exemption from the registration requirements of the Act. This contention is untenable by the language of section 12(c) of the Agreement. When a promisor has expressly or impliedly accepted the risk of impossibility, e. g. the promisee's prevention or hindrance of performance by the promisor, the promisor's obligation to perform is absolute and not conditional. Duff v. Trenton Beverage Co., 4 N.J. 595, 604, 73 A.2d 578 (1950); Edwards v. Leopoldi, 20 N.J.Super. 43, 53, 89 A.2d 264 (App. Div.1952); Schaefer v. Brunswick Laundry, Inc., 116 N.J.L. 268, 271, 183 A. 175 (E & A 1936).[2]

■ The assumption of the risk of prevention or hindrance may be found in the language of the agreement itself. Gherardi v. Trenton Board of Education of City of Trenton, 53 N.J.Super. 349, 362–365, 147 A.2d 535 (App.Div. 1958), citing Psaty & Fuhrman v. Housing Authority of City of Providence, 76 R.I. 87, 68 A.2d 32, 10 A.L.R.2d 789 (1949). In the present case section 12(c) states that " * * * if it is impossible or impracticable for any reason to obtain an exemption from registration," defendant would, on request, use its best efforts to obtain registration of the shares at its own expense. Since defendant agreed to register if exemption

were not possible for *any* reason, defendant expressly assumed the risk that one or both of the underwriters would be the cause of the impossibility of obtaining the exemption. The defense that defendant's contractual duties under section 12(c) were discharged by Rogers' status, precluding the exemption, is consequently not available as a result of the express language of section 12(c) by which defendant agreed to be obligated even if either underwriter prevented the granting of the exemption.

■ With reference to the plea of indispensability, and the motion of plaintiff addressed thereto, it now appears by defendant's admission and without contradiction that, since the notice of the present motions was served, all of the shares owned by Rogers which were subject to the provisions of section 12(c) of the Agreement, have been acquired and are now owned by the defendant. The question of whether or not Rogers is an indispensable or necessary party has, therefore, become moot. Irving Air Chute Co. v. Switlik Parachute & Equipment Co., 26 F.Supp. 329, (D.C.N.J. 1939). Accordingly, the defendant's affirmative defense so alleging, and plaintiff's motion to join Rogers as a party (abandoned during the oral argument), will be respectively stricken and denied.

The affidavits of both parties in support of and in opposition to the motion for summary judgment disclose that section 12(c) of the Agreement was supplemented by a letter, dated July 27, 1959, from Underwriter to Company, in which Underwriter agreed that for a period of thirteen months from the effective date of the public stock offering they would make no sale, transfer, assignment or delivery of any of the 7,500 shares (later increased to 7,800) sold to them by de-

2. Although defendant has suggested that New York rather than New Jersey law might govern the legal questions raised on this motion, since neither party has shown any conflict between New York and New Jersey law on such questions, they are presumed to be in accord and New Jersey law governs. N.J.S. 2A:82–27, N.J.S.A.; Donnelly v. United Fruit Co., 75 N.J.Super. 383, 397, 183 A.2d 415 (App.Div.1962), affd. 40 N.J. 61, 190 A.2d 825 (1963).

fendant's principal stockholders to members of any selling group or to any other person, and that such shares would not be made the subject of a public offering unless they had been properly registered under the Act, or had qualified under Regulation A thereunder. It is further conceded that on August 2, 1961, the defendant applied to the Commission, pursuant to its Regulation A, for exemption from registration of the 7,800 shares, but that application for exemption was denied for the reason that Casper Rogers and Casper Rogers Co. were subject to pending injunction proceedings by the Commission in connection with matters unrelated to the defendant's offering.

The denial of exemption from registration took place on October 25, 1961. On January 25, 1962 plaintiff submitted a written demand that defendant proceed with registration. This request was refused by defendant, and it continued to attempt to obtain an exemption by offering to buy Rogers' shares to remove its disability from the application. The S.E.C. continued to refuse to act on the application, and on May 8, 1962, defendant formally withdrew it. On November 1, 1962, plaintiff again wrote defendant requesting that it proceed to register the shares of both underwriters. To this final demand, defendant on November 5, 1962 responded that it had complied with any obligation it had, that plaintiff had no further claim, and that any further steps to qualify the stock would be at plaintiff's expense.

Upon the pending motion, the plaintiff contends that the sole issue is to be found in the question of whether or not the defendant was obligated to use its best efforts to accomplish registration of the 7,800 shares of its stock referred to in section 12(c) of the Agreement, after its

attempts to obtain their exemption from registration had failed. Defendant's position, that it is excused from complying with the plaintiff's demand that it procure registration of the stock because of the implication of the condition that neither of the underwriter parties would engage in any conduct which would prevent or render more difficult the defendant's best efforts to secure exemption, has been rejected above, and this defense has been stricken. Thus, the Court on this motion is called upon to construe the language of section 12(c) of the Agreement (New York Sash & Door Co. Inc. v. National etc. Association, 131 N.J.L. 466, 36 A.2d 891 (E & A 1944)) and to determine whether the Agreement has been breached against a factual background which movant contends is barren of any substantial factual issues.

Questions of fact posed by affidavits on a motion for summary judgment may not be resolved by the Court. Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir. 1948, 169 F.2d 580. It is only where no genuine issue of fact exists and a party is entitled to judgment as a matter of law upon such uncontested facts that the provisions of F.R.Civ.P. 56 permit the entry of a summary judgment; but an issue of fact must be raised by an affidavit or method other than the mere allegation or denial in pleadings. See F.R.Civ.P. 56, as amended July 1, 1963. In the present case, however, I find that all the affidavits of both parties fail to disclose the existence of any genuine issue of fact, and the undisputed facts are set forth earlier in this opinion.[3] "Genuine issue of fact" as the phrase is used in F.R.Civ.P. 56 is defined in Durasteel Co. v. Great Lakes Steel Corp., 8 Cir. 1953, 205 F.2d 438, 441, as follows: "An issue of fact is not genuine

3. The only factual issues in dispute, in the affidavits submitted on this motion, are concerned with defendant's allegation that plaintiff insisted on proceeding with the application for exemption when it knew Rogers' status would bar the exemption, and while assuring defendant that Rogers' difficulties would be cleared up quickly. Even if these allegations are true, they would have no effect on defendant's obligation to register the shares if exemption became impossible for any reason, as that contract obligation is construed by the Court.

unless it has legal probative force as to a controlling issue, 35 C.J.S., Federal Courts, § 144 p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment." Cited and quoted in Elbow Lake Coop. Grain Co. v. Commodity Credit Corp., 251 F.2d 633, 637 (8 Cir. 1958). The Third Circuit has affirmed a summary judgment based upon an interpretation of unambiguous language contained in a written contract. New Wrinkle v. John L. Armitage & Co., 3 Cir. 1956, 238 F.2d 753. The language of section 12(c) of the Agreement, presently before the Court, upon which plaintiff's right to judgment depends, is equally unambiguous.

■ Section 12(c) of the Agreement obligated the defendant to use its best efforts to obtain an exemption from the registration requirements for the shares sold to the plaintiff and Rogers by the defendant's principal stockholders. This undertaking is supplemented by the further agreement of the defendant that, "if it is impossible or impracticable *for any reason* to obtain an exemption from registration for such shares," (emphasis supplied) the defendant will, upon written request, use its best efforts to cause the shares to be *registered* under the Act, and to pay "all expenses in connection with the obtaining of such exemption or in connection with such registration". By May 8, 1962, when defendant formally withdrew its application for exemption, it was obviously impossible to obtain an exemption for plaintiff's and Rogers' shares. However, the Agreement provided in effect that *irrespective of the cause* of the failure to secure exemption from registration, if such exemption could not be obtained, the defendant

would, on request, use its best efforts to obtain registration of the shares and to pay all expenses incident thereto. Pursuant to section 12(c), plaintiff on November 1, 1962, requested through its attorney that defendant proceed to register the shares. The uncontradicted fact is that defendant responded, in its attorney's letter of November 5, 1962, by declaring it had no further obligation to plaintiff under section 12(c) and refusing to make any effort to secure registration of the stock at its own expense. This refusal to perform the contract constituted an anticipatory breach thereof. Ross Systems v. Linden Dari-Delite, Inc., 1961, 35 N.J. 329, 340, 173 A.2d 258.

■ It is well settled in New Jersey that courts will not make a better or different contract than the parties themselves have seen fit to enter into. William Berland Realty Co. v. Hahne & Company, Ch.Div.1953, 26 N.J.Super. 477, 486, 98 A.2d 124, mod. App.Div.1954, 29 N.J. Super. 316, 102 A.2d 686. The intention of the parties to the Agreement in the action before me is clear from the language of the written contract itself. Defendant unconditionally agreed to use its best efforts to secure exemption of the subject stock at its own expense; failing which, it unconditionally agreed to use its best efforts to obtain registration thereof, likewise at its own expense. Its efforts to secure exemption were unsuccessful, and exemption became impossible within the meaning of the Agreement. Its obligation to obtain registration in such event was not dependent upon the expense to which it was put in its futile efforts to secure exemption. It has refused to perform its supplemental undertaking.

■ The case presented on plaintiff's instant motion for summary judgment discloses, without contradiction, an unexcused refusal by defendant to use its best efforts to cause the shares of its stock sold to plaintiff to be registered under the Act and to pay all expenses in connection with such registration. This refusal constitutes as a matter of law, a breach

of defendant's obligation under section 12(c) of its Agreement with the plaintiff. Plaintiff is, therefore, entitled to recover from the defendant such damages, if any, which it may have sustained by reason of such breach. There being no evidence before me from which the quantum of damages, if any, to which plaintiff may be entitled can be determined, a trial will be necessary for the presentation of evidence thereof. Accordingly, plaintiff may present an order in conformity with the views herein expressed, pursuant to F.R.Civ.P. 56(d).