W. Willard **WIRTZ**, Secretary of Labor,
Plaintiff,

v.

**DEPENDABLE TRUCKING CO.,**
Defendant.

**Civ. A. No. 1031–65.**

United States District Court
D. New Jersey.

Nov. 4, 1966.

Charles Donahue, Sol., John A. Hughes, Regional Atty., Francis V. La-Ruffa, Supervising Atty., Joel H. Swift, New York City, for plaintiff.

Epstein & Fluharty, Camden, N. J., Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel, by Arthur R. Littleton, and John C. Peet, Jr., Philadelphia, Pa., for defendant.

## OPINION

COHEN, District Judge:

Summary Judgment is sought by plaintiff, United States Secretary of Labor, against defendant Dependable Trucking Co. (Dependable), a Pennsylvania corporation, which has its principal office and place of business in Pennsauken, New Jersey. Specifically, the complaint alleges that the defendant Dependable employs mechanics as repairmen of its motor tractor and trailer equipment who are paid on an hourly basis, but who work regularly in excess of forty hours a week, receiving only straight time pay for these hours, in violation of the requirements of Sections 7 and 15(a) (2) of the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1060; 29 U.S.C. §§ 201–219, which require a rate of overtime pay for work in excess of forty hours at a rate of one and one-half times their regular hourly rate. By virtue thereof, the plaintiff seeks a permanent injunction prohibiting such alleged practices and restraining any withholding of overtime compensation.

The position of the defendant, in resisting plaintiff's motion for Summary Judgment, is that its operations are not within the regulatory provisions of the Fair Labor Standards Act, supra. Rather, it contends that its employees come within Section 204(a) (1) of the Motor Carrier Act, as amended in 1956, 49 U.S.C. § 304(a) (1), which provides in pertinent part, that the Interstate Commerce Commission has the duty to regulate common carriers by motor vehicle, and that in this regard the Commission, and not the Secretary of Labor, may establish reasonable requirements respecting qualifications and maximum hours of service of employees who affect the safety of operation and equipment of interstate common carriers by motor vehicle.

Jurisdiction is vested in this Court under Section 17 of the Act. 29 U.S.C. § 217. And while Dependable has filed a petition with the Interstate Commerce Commission (I.C.C.) for a determination of the classification of its employee-mechanics and contends, therefore, that this Court should not act in this matter until the Commission has ruled, such contention was answered in Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707, 67 S.Ct. 954, 91 L.Ed. 1184 (1947) to the contrary. The Federal District Court is obliged to make its determination independently of the Commission's ruling.

No factual dispute regarding any genuine issue appearing, the matter is ripe for Summary Judgment. Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580 (3 Cir. 1948); Robert L. Ferman & Co. v. General Magnaplate Corp., 33 F.R.D. 326 (D.C.N.J.1963). However, in determining which of the two Acts, the Fair Labor Standards Act or the Motor Carrier Act, embraces these employees, examination of the factual situation is essential in order to classify their activities. Levinson v. Spector Motor Co., 330 U.S. 649, 674–675, 681, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

Defendant Dependable conducts its operations in Pennsauken, New Jersey, where it garages, maintains and repairs motor vehicles and equipment, consisting of motor trucks and tractor-trailer rigs which it leases exclusively to Reisch Trucking and Transportation Company (Reisch). Dependable also leases two trucks to another private concern, but which it does not service or repair. The equipment leased by Reisch is regularly engaged in transportation of goods in interstate commerce. Both Dependable and Reisch maintain common offices and clerical employees, with corporate officers performing work interchangeably for both firms. Other than these office employees, there is no interchange of personnel between the two firms. All of Dependable's personnel, with the exception of the office force and two foremen, consists of twenty-two mechanics or repairmen engaged in the servicing, repair and maintenance of Dependable's leasing motor vehicles. Both corporations are owned and operated by the Weiner

family. Erwin Weiner owns 99% of Dependable, 25% of Reisch, and his brother Martin owns 75% of Reisch. Reisch, in turn, is a wholly owned subsidiary of EHM Rental Company. Erwin Weiner owns approximately 20% of the rental company, and almost all of the remainder of the company is owned by his brother Martin. Erwin Weiner is the President of Dependable, and the General Manager of Reisch.

All mechanics service and maintain the leasing equipment and repair any defects. Additionally, they make daily safety checks of the motor vehicles, as required by the I.C.C.'s regulations of all carrier equipment used in interstate commerce.

Defendant relies on Section 204(a) (1) of the Motor Carrier Act, supra, which confers upon the I.C.C. authority to regulate common carriers by motor vehicle engaged in interstate commerce, with power in it to establish reasonable requirements regarding qualifications and maximum hours for service of employees whose activity pertains to and affects the safety of equipment and operation of motor carriers. It is contended that subsection (e) of the Act, which extends to "lessees" of equipment "as if they were the owners of such vehicles," embraces Dependable's mechanics within the I.C.C. regulations, and hence within the exemption to Section 7 of the Fair Labor Standards Act, supra, as provided in Section 13 thereof.

It is true, that if the mechanics in question were employees of Reisch, although a lessee, subsection (e) would apply and bring the mechanics within the exemption of Section 13(b) (1) of the Fair Labor Standards Act, and within the regulatory power of the I.C.C. under the 1956 Amendment to the Motor·Carrier Act, which added subsection (e) to Section 204. Section 13 of the Labor Act, in pertinent part, provides:

"(b) The provisions of section 7 shall not apply with respect to—

(1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935; * * *"

■■ Exemptions from the Fair Labor Standards Act are to be narrowly construed against employers. Phillips Co. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Calaf v. Gonzalez, 127 F.2d 934, 937 (1 Cir. 1942); Rutledge, J. dissent in Levinson, supra, at page 686, 67 S.Ct. 931. In the case of interstate motor carriers, this is so whether they be owners or lessees of the equipment. The criterion is whether the servicing mechanics are employees of the interstate carrier, rather than whether the carrier may own or lease the equipment which is serviced in accordance with I.C.C. safety regulations. Subsection (e) of Section 204 of the Motor Carrier Act applies to the carrier's employees, encompassing them within the exemption of the Fair Labor Standards Act and, in turn, placing them within the regulatory powers of the I.C.C. under the Motor Carrier Act. For the latter Act speaks of "employees" of the carrier. Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). In the instant case, the mechanics are employees of a non-carrier lessor, seeking to assert exemption, and it must meet the burden of showing, plainly and unmistakably, a situation within the terms and spirit of the exemption provided in the Act. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed. 2d 815 (1958).

In the leading case of Boutell, supra, presenting similar facts, four men operated Boutell Service Company as partners. These partners were also the sole stockholders of Boutell Drive-Away Company, an interstate carrier. The service company's mechanics were engaged exclusively in servicing vehicles owned and operated by the interstate carrier. There the proposition was advanced, as it is here, that for reasons of their own, the servicing employees were employed

by a company distinct from the carrier, but that this was merely form, the substance being that they were really engaged with the carrier and that, therefore, the I.C.C. had power and regulatory authority over them. The Supreme Court rejected this argument, stating at pages 467–468 of 327 U.S., at page 634 of 66 S.Ct.:

> "Whatever may be the precise scope of the Commission's 'power to establish' hours of service, we hold that the Commission does not have that power over the men here concerned because the Commission's jurisdiction is limited to employees of 'carriers' and the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than of the Drive-Away Company, which is a carrier. This is true although the work these employees do is all supplied to the Drive-Away Company through the Service Company."

The *Boutell* case was decided in 1946, and ten years later, Congress amended Section 204 of the Motor Carrier Act by adding subsection (e), in pertinent part, as follows:

> "(e) Subject to the provisions of subsection (f) hereof, the Commission is authorized to prescribe, with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them, in the furnishing of transportation of property—
>
> \*    \*    \*    \*    \*    \*
>
> "(2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof, which requirements may include but shall not be limited to

promulgation of regulations requiring liability and cargo insurance covering all such equipment."

The primary intent of the foregoing is to impose upon leasing carriers the obligation to comply with I.C.C. regulations regarding safety of operation and equipment "as if they were the owners of such motor vehicles." As stated by the Supreme Court in *Levinson*, supra, almost ten years before the above amendment, at page 673 of 330 U.S., at page 944 of 67 S.Ct.: "\* \* \* we recognize that the Commission has such power over all employees of such carriers whose activities affect safety of operation and that the Commission does not have such power over employees whose activities do not affect safety of operation." The 1956 Amendment does not on its face seek to reach out to mechanics who are *not employees of the carrier*, whether such carrier be the owner, or the lessee, of the equipment. The I.C.C. regulations are imposed upon the *interstate carrier* to insure safety of operation and equipment. If the carrier has equipment which is serviced by those other than its own employees, or under its immediate supervision, then in that case, both under the statute and the Commission's rules, the carrier is required to make a safety inspection before accepting delivery from its lessor, or servicing company. See Appendix to American Trucking Assns. v. United States, 344 U.S. 298, 323–327, 73 S.Ct. 307, 97 L.Ed. 337 (1953), reh. den. 345 U.S. 913, 73 S.Ct. 638, 97 L.Ed. 1347 (1953), which discloses that the rules, prior to the 1956 Amendment, and the present regulations are almost identical. Compare 49 C.F.R. 207.4 with the rules in the appendix of *American Trucking*. Apparently, both Congress and the I.C.C. considered the 1956 Amendment as merely a codification of preexisting rules and regulations, rather than an expansion of the jurisdiction of the I.C.C., under its safety program to include such persons as may be connected to the safety of equipment, but who are not in fact employees of interstate carriers.

The commendable and extensive safety program initiated by Congress, preceding the 1956 Amendment of the Motor Carrier Act, prompted innovations both in Congressional and Commission hearings, as well as in complex arrangements within the interstate carrier industry itself. Had either Congress or the Commission intended to reach servicing personnel of interstate carriers not in the employ of such carriers, aside from constitutional considerations, surely either or both would have been most specific and articulate in so declaring. Neither has sought to expand I.C.C. regulations to such a broad and far-reaching extent.

In considering the history of the broad Congressional Safety Program and the development of the I.C.C.'s regulations, it seems clear that both seek to promote safety of operation in an increasingly hazardous, heavily traveled, interstate industry, rather than strangle it by prescribing regulations reaching beyond the employment control of the carriers into every conceivable activity of others. Therefore, it is reasonable to conclude that the Motor Carrrier Act and the I.C.C. regulations promulgated thereunder govern interstate motor carriers and their employees. While, on the other hand, service, repair and maintenance personnel not in the employ of such carriers are governed by the Fair Labor Standards Act.

In conclusion, the corporate entities of Dependable, the owner-lessor-employer, and Reisch, the lessee-interstate carrier, are entirely distinct, regardless of their peculiar corporate structures. Dependable, as in *Boutell*, supra, is the employer of the mechanics here in question, not Reisch, the interstate carrier. Therefore, Dependable's employees fall neither within the exemption of the Fair Labor Standards Act, Section 13, nor Section 204(e) of the Motor Carrier Act. Conversely, as a matter of law, they are within the purview of Section 7 of the Fair Labor Standards Act and, consequently, plaintiff is entitled to the relief sought. For these reasons, the motion for Summary Judgment will be granted, permanently restraining defendant from violating Sections 7 and 15(a) (2) of the Fair Labor Standards Act, and from withholding overtime compensation due to the employees in question.

Counsel for plaintiff shall submit an appropriate order.