42 N.J. Super. 1 (1956)
125 A.2d 732
CATERINA SALVEMINI AND NICOLO SALVEMINI, PLAINTIFFS-RESPONDENTS,
v.
DOROTHY GIBLIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1956.
Decided October 5, 1956.
*2 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Anthony P. LaPorta argued the cause for appellant.
Mr. Rudolph R. Naddeo argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a summary judgment entered in the Law Division in favor of plaintiffs in their action for possession of land, and dismissing her counterclaim.
Plaintiffs by their complaint sought possession of the ground floor apartment occupied by defendant at 318 Park Avenue, Hoboken, N.J., which premises had been conveyed to them by Pauline Gatto and Peter, her husband, on June 24, 1955. Defendant filed a verified answer and counterclaim. The answer contains an "affirmative legal and equitable defense" which discloses the following factual representations:
Carmine Pascale and Catherine, his wife, were owners of 318-320 Park Avenue. Catherine died July 10, 1934. In October 1936 Carmine Pascale and defendant "married themselves by their own marriage agreement" and thereafter lived at 318 Park Avenue and cohabited as man and wife, "but almost secretly" because Pascale did not want his relatives to know of the marriage. Defendant refers to Pascale as her "undisclosed husband." On May 2, 1955 Pascale conveyed 318-320 Park Avenue to his niece Pauline Gatto and her husband Peter, the recorded deed bearing $4.40 in revenue stamps, thereby indicating a consideration of $4,000. By contract dated May 18, 1955 the Gattos agreed to sell the premises to Nicolo Salvemini for $4,000, and a deed into Salvemini and his wife was executed June 24 following.
Defendant alleges  although she makes no further point of it  that at the time of the conveyance to the Gattos, Pascale was mentally incompetent, and on June 14, 1955 was confined to a mental hospital on the complaint of his brother. She claims that although she was in physical possession of the premises, neither the Gattos nor plaintiffs, at the time *3 of their respective deeds, ever made inquiry to ascertain from her what her right, title or interest in the premises might be, although they knew that she was Pascale's wife.
The right, title or interest to which defendant refers is based on an agreement executed by Pascale and defendant on January 5, 1955, and a will executed by Pascale January 6, copies of both being attached to and made part of the answer. The agreement states that Dorothy Giblin agrees to act as housekeeper for Pascale during the term of his natural life and to keep a clean and happy home for him. Pascale, in turn, agreed that defendant be his housekeeper for life; that he would execute a will leaving her his entire estate, provided she was still his housekeeper at the date of his death; and that he would purchase a two- or three-family house in which he and defendant would make their home until his death, defendant to have a half-interest therein if she continued as his housekeeper. Pascale executed a will the next day whereby, after directing payment of all his just debts and funeral expenses, he left the rest, residue and remainder of his estate to "my beloved housekeeper, Dorothy Giblin," and designated her, by similar description, as executrix without bond.
Also attached to the answer is a real estate agreement dated January 28, 1955, undoubtedly undertaken pursuant to the agreement of January 5, whereby Carmine Pascale and Dorothy Giblin agreed to purchase property designated as 845 Garden Street, Hoboken, for $10,300. The sale was never consummated because of Pascale's commitment to the mental hospital.
On the basis of this factual array, defendant by her answer claimed that any right, title and interest which plaintiffs and their predecessors in title might have is subject to hers, and that she has an absolute right to the control and possession of 318 Park Avenue.
Defendant also counterclaimed for an accounting of rents collected by plaintiffs since June 1, 1955, judgment for the total rents so collected, and judgment for complete and exclusive right of possession of the premises. The counterclaim *4 reveals that as of the date of its filing, defendant was 40 years old and "her alleged husband," Carmine Pascale, 72, the marriage having taken place when she was 21 and he 53.
Plaintiffs promptly moved for an order striking the answer as frivolous and the counterclaim as insufficient in law, and for summary judgment. Attached to their supporting affidavit is the death certificate of Catherine Pascale. It reveals that the person giving the information contained in the certificate was Carmine Pascale, that Catherine was married and lived at 318 Park Avenue, and that she died July 18, 1944. The affidavit of one Mancini, in support of plaintiffs' motion, states that immediately after his in-laws purchased 318 Park Avenue he accompanied them and their attorney on a visit to the property, and that on that occasion defendant, who referred to herself as Dorothy Giblin, asked whether she could stay until the house was demolished and in the meantime act as superintendent. (At oral argument it was revealed that the premises were in fact demolished to make way for a new dwelling.)
Defendant also moved for summary judgment under R.R. 4:58-3, her supporting affidavit claiming that plaintiffs were not bona fide purchasers for value and without notice.
In entering summary judgment in favor of plaintiffs and dismissing defendant's counterclaim the trial judge found that there could be no common law marriage under the circumstances because, at best, it took place after the statute outlawing such marriages. See N.J.S.A. 37:1-10, fixing December 1, 1939 as the date after which common law marriages were invalid. He noted that defendant's counsel conceded there was no such marriage. The judge further found that the documentary evidence showed defendant was Pascale's housekeeper, that their relationship was purely one of employer-employee, and that the relationship having dissolved, defendant had no equitable interest in the premises. He accordingly held that plaintiffs were entitled to possession.
On this appeal, as in the Law Division, defendant no longer contends that there was a valid and subsisting common law marriage. The abandonment of this argument is understandable *5 in the light of the overwhelming proofs to the contrary: the death certificate which shows that Pascale's wife Catherine did not die until June 1944, ten years after the date set out in the answer; and reference to defendant as "Dorothy Giblin" in the January 5, 1955 agreement, as "my beloved housekeeper, Dorothy Giblin," in the will of January 6, 1955, as Dorothy Giblin in the January 28, 1955 agreement to purchase the Garden Street premises, and as "Miss Dorothy Giblin" in a rent receipt she signed on behalf of Pascale in June 1955.
Defendant's argument now is that plaintiffs, like their grantors, the Gattos, were purchasers chargeable with notice of her rights as a person in possession, citing the rule in LaCombe v. Headley, 91 N.J. Eq. 63 (E. & A. 1919), and Hinners v. Banville, 114 N.J. Eq. 348 (E. & A. 1933). That rule would apply were defendant able to establish an equitable interest in the premises in question. As noted, she bases her claim to such an interest on the January 5, 1955 agreement with Pascale, and Pascale's will, and argues that plaintiffs hold the premises on a constructive trust for her.
The agreement of January 5, 1955 speaks in terms of the future  as to services, execution of a will by Pascale in defendant's favor, and the purchase of a house where he and defendant would make their home and in which she would have a half interest. The will was executed the next day. The agreement to purchase a house was executed January 28. The remaining part of the January 5 agreement, dealing with personal services, is no longer possible of performance because of Pascale's continuing confinement in a mental institution "as a dangerous maniac," to use defendant's language. This phase of the agreement was of such a nature as to admit only of personal performance or, at the least, to project the implication that it was to be operative only during the continuance of personal relations. As such, it is deemed dissolved by disability which renders its performance impossible according to the evident intention, just as in the case of death. See Siesel v. Mandeville, 140 N.J. Eq. 490, *6 492 (Ch. 1947); 12 Am. Jur., Contracts, §§ 375, 376, pp. 949, 952.
We turn to the will. The agreement of January 5, fairly read, contemplates that Pascale would by will leave to defendant only the property of which he was seized at the time of his death. He in no way bound himself not to sell or convey the property in question. The provision whereby he agreed to purchase a house where he and defendant could make their home until his death clearly points to a common intention to set up housekeeping elsewhere, and to leave Pascale free to deal with the property at 318-320 Park Avenue, Hoboken, as he wished. The will itself, like all wills, is effective as of the moment of death; defendant was to get whatever estate Pascale then had.
Defendant argues that Van Dyne v. Vreeland, 11 N.J. Eq. 370 (Ch. 1857), and 12 N.J. Eq. 142 (Ch. 1858), controls. That case is completely distinguishable on its facts, which may be found summarized at 11 N.J. Eq. 379-380. Complainant there had served defendant for 25 years upon the faith of an agreement made at defendant's solicitation with complainant's father that for such services defendant would at his death provide for complainant as he would for his own son. He persuaded the father that he need make no provision for his son, so that complainant was deprived of participation in his father's estate. Defendant received complainant into his family upon the terms of the agreement, and complainant's services were rendered and accepted upon the expectation of the agreement being carried out in good faith. In fact, defendant repeatedly acknowledged his obligation to fulfill the agreement by making different wills, from time to time, in accordance with the understanding of the parties, and verbally renewed the agreement frequently with complainant, inducing him to continue his services. The court expressly found that defendant's conveyance of his property to a third party was for the purpose of defrauding complainant and of placing the property in such a position that he would derive no benefit from it after defendant's death. The court also found that the vendee was not a bona fide purchaser without *7 notice; he did not pay the purchase money and he knew of complainant's rights. The conveyance was characterized as a "most improvident one." The circumstances of the present case are entirely unlike those in Van Dyne.
Chancellor Williamson said in the second opinion in the Van Dyne case that the agreement there put no restraint whatever upon defendant and his wife to the free and unrestricted enjoyment of their property; they might give it away while they lived, but could not make a disposition of it to take effect at death, because whatever property was then left, they had agreed complainant should have. 12 N.J. Eq., at pages 147 and 153.
We conclude that defendant has shown no equitable interest in the property in question which plaintiffs, as purchasers, were bound to notice at their peril. The Law Division judgment is affirmed.