210 N.J. Super. 646 (1986)
510 A.2d 319
GEORGE SEITZ, PLAINTIFF,
v.
MARK-O-LITE SIGN CONTRACTORS, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided January 31, 1986.
*648 Norman H. Mesnikoff for plaintiff.
Roger J. McLaughlin for defendant (Mangini, Gilroy, Cramer, & McLaughlin, attorneys).
MILBERG, A.J.S.C.
This is an action for breach of contract in which plaintiff, George Seitz, seeks damages from defendant, Mark-O-Lite Sign Contractors, Inc., in the amount of $7,200.
At trial, counsel for the parties agreed to submit the dispute to the court's determination based on the following stipulated facts:
1. Prior to December 1983, plaintiff submitted a bid to the Ocean County Center for the Arts on a contract involving renovations to the Strand Theater in Lakewood, New Jersey.
2. A portion of the Strand Theater project involved the restoration and replacement of a neon sign marquee.
3. Plaintiff was the low bidder on the Strand project.
4. Plaintiff first spoke with a representative of defendant in December 1983, and received a verbal estimate of from $10,000 to $12,000 for the sign work required in connection with the Strand project.
5. No written estimate was rendered by defendant and no contract was executed by plaintiff and defendant as of the end of 1983.
6. Plaintiff signed a contract for the Strand Theater renovation with the Ocean County Center for the Arts on December 26, 1983.
7. Items 1, 2, 3 and 4 of the contract pertain to the sign work and totalled $19,500 of the total contract price for the Strand Theater project of $51,200.
8. Plaintiff obtained quotations from other sign companies in early 1984, including one from Garden State Sign Company dated January 20, 1984, in the amount of $20,228.
9. Plaintiff had further discussions with defendant and on April 18, 1984, a contract was executed between the parties in the total amount of $12,800 for the sign work. On that date plaintiff gave defendant a deposit check in the amount of $3,200.

*649 10. The contract between the parties contained a provision in paragraph (2) which reads as follows: "The Company shall not be liable for any failure in the performance of its obligation under this agreement which may result from strikes or acts of labor union, fires, floods, earthquakes, or acts of God, or other conditions or contingencies beyond its control."
11. Within a few days of the execution of the contract, defendant discovered that its expert sheet metal worker, Al Jorgenson, a diabetic, was required to enter the hospital and would be unable to work for an unknown period of time. Jorgenson was the only employee of defendant capable of performing the expert and detailed sheet metal work required.
12. Defendant advised plaintiff of the situation with its employee by telephone and on May 3, 1984, sent a letter to plaintiff returning the uncashed deposit check offering to complete any portion of the work which defendant was able to perform.
13. Defendant also contacted other sign companies and was advised that the cost of the work would be $18,000 to $20,000 and, therefore, it would have been economically infeasible for defendant to retain the services of another sign company.
14. Plaintiff entered into an agreement with City Sign Service, Inc. to perform the necessary work for the total sum of $20,000. It is to be noted that the items listed for additional rail, additional neon, and a neon border were extra items added to the project and were not encompassed within the specifications which defendant had originally agreed to perform.
15. The total damages claimed by plaintiff are in the amount of $7,200, representing the difference between the City Sign Service price of $20,000 and the price of $12,800 stated in the contract between the parties.
Defendant asserts the defense of impossibility of performance due to the disability of its sheet metal worker, Jorgenson. Specifically, defendant urges that the illness of Jorgenson discharged its obligation of performance pursuant to paragraph 2 of the contract. Paragraph 2, commonly known as a force majeure clause, reads:
The Company shall not be liable for any failure in the performance of its obligations under this agreement which may result from strikes or acts of Labor Union, fires, floods, earthquakes, or acts of God, War or other conditions or contingencies beyond its control. [Emphasis supplied]
Defendant contends that Jorgenson's disability was a "condition or contingency beyond its control," that its obligation of performance was therefore excused under the above-quoted, exculpatory language.
In construing broad, exculpatory language of this type, however, the courts of this State and the majority of jurisdictions *650 invoke the rule of ejusdem generis. See Abeles v. Adams Engineering Co., 64 N.J. Super. 167, 176 (App.Div.), mod. 35 N.J. 411 (1961); 17 Am.Jur.2d, Contracts, § 270 (1964). Under this principle, the catch-all language of the force majeure clause relied upon by defendant is not to be construed to its widest extent; rather, such language is to be narrowly interpreted as contemplating only events or things of the same general nature or class as those specifically enumerated. Buono Sales, Inc. v. Chrysler Motors Corp., 363 F.2d 43, 47 (3 Cir.1966), cert. den. 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 1966); 17 Am.Jur.2d, supra, § 409; 24 P.O.F.2d at 291 (1980); see Abeles v. Adams Engineering Co., supra, 64 N.J. Super. at 176.
Jorgenson's disability does not fall into the same class as that of labor strikes, fires, floods, earthquakes or war. Nor can it be termed an "act of God." Jorgenson's condition was not the consequence of a stroke or a heart attack, either of because of its suddenness. See 1 Am.Jur.2d, Act of God, which might, in a particular case, be deemed an "act of God" § 10. Jorgenson is a diabetic. His disability  a partial amputation of his foot  was the result of the progressive aggravation of an infection, which aggravation was apparently rooted in his diabetes. Jorgenson's affliction was not sudden; indeed, his disability was a reasonably foreseeable consequence of his unfortunate malady. Hence, Jorgenson's incapacitation cannot be classed an "act of God" by any logical stretch of the term. See generally 1 Am.Jur.2d, Act of God, supra, § 3. Defendant's force majeure clause does not apply.
It does not necessarily follow, however, that defendant is bereft of the defense of impossibility of performance; thus far, it has merely been determined that the force majeure clause is unavailing.
There is very little, if any, recent New Jersey case law pertinent to the impossibility defense asserted herein; yet the general principles are well settled and relatively unchanged.
*651 The traditional rule with respect to impossibility by virtue of the death or illness of a particular person is set forth in the Restatement, Contracts, § 459 (1932):
A duty that requires for its performance action that can be rendered only by the promisor or some other particular person is discharged by his death or by such illness as makes the necessary action by him impossible or seriously injurious to his health, unless the contract indicates a contrary intention or there is contributing fault on the part of the person subject to the duty.
See generally 84 A.L.R.2d, § 8[c] at 49 (1962).
A more modern formulation of the doctrine is found in §§ 261 and 262 of the Restatement, Contracts 2d (1981), which speak in terms of "impracticability" rather than "impossibility":
§ 261. Discharge by Supervening Impracticability
Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.
§ 262. Death or Incapacity of Persons Necessary for Performance
If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the non-occurrence of which was a basic assumption on which the contract was made.
Section 262 states a specific instance for the application of the rule stated in § 261 and, thus, is subject to the qualifications stated in that preceding section. See Comment a to § 262, supra.
Regardless of which Restatement is adopted with respect to impossibility, however, the success of the defense in the particular mode asserted herein turns on a determination that the duty in question, as understood by the parties, can be performed only by a particular person. Restatement, Contracts 2d, § 459, Comment c, § 262, Comment b; see Calamari & Perillo, Contracts, § 13-6 at 489 (1977). Such has long been the governing standard in this State, see Ryan v. Brown Motors, Inc., 132 N.J.L. 154, 158 (E. & A. 1944); Schaefer v. Brunswick Laundry, Inc., 116 N.J.L. 268, 271 (E. & A. 1936); Siesel v. Mandeville, 140 N.J. Eq. 490, 492 (Ch. 1947); see also *652 Salvemini v. Giblin, 42 N.J. Super. 1, 5 (App.Div. 1956), aff'd 24 N.J. 123 (1957), as well as in the majority of jurisdictions. See generally 17 Am.Jur.2d, Contracts, supra, § 414; 84 A.L.R.2d, supra, § 8[a], [c].
Thus, it is clear from the foregoing that the primary application of the impossibility defense in the form asserted by defendant is in the area of personal service contracts, that is, contracts which contemplate the peculiar skill or discretion of a particular person. Restatement, Contracts 2d, supra, § 262 Comment b; see Walter E. Heller & Co. v. American Flyers Airline Corp., 459 F.2d 896, 901 (2 Cir.1972); see generally, 17 Am.Jur.2d, Contracts, supra, §§ 413, 414. Where, as here, the agreement is silent as to whether a particular person is or is not necessary for performance, all the circumstances will be considered to determine whether the duty, as understood by the parties, sufficiently involves elements of personal service or discretion as to require performance by a particular individual. Restatement, Contracts 2d, § 262, Comment b.
The real question, therefore, is whether the duty of performance can be delegated to another: If the act to be performed is delegable, then the illness of the promisor or of a third person who is expected to perform the act does not excuse performance. Calamari & Perillo, supra, § 13-6 at 489; see Restatement, Contracts 2d, § 262, Comment b ("If an obligor can discharge his duty by the performance of another, his own disability will not discharge him."); Restatement, Contracts 2d, § 459, Comment c ("If a contractor without violation of duty can go abroad and perform by means of another, his death or illness will not make subsequent performance of his contract impossible."). The preceding is merely a corollary of the general rule that, for impossibility to operate as an excuse, it must be objective ("the thing cannot be done") rather than subjective ("I cannot do it"). Calamari & Perillo, supra § 13-12 at 497; see *653 Restatement, Contracts 2d, § 261, Comment e; Duff v. Trenton Beverage Co., 4 N.J. 605, 606 (1950).
It is readily apparent from an application of the foregoing principles that defendant cannot prevail on its claim of impossibility of performance. Nothing in the language of the contract contemplates performance only by Jorgenson; nor do the circumstances demonstrate that the performance to be rendered by Jorgenson was so personal in nature, calling for a peculiar skill or special exercise of discretion, as to make it nondelegable. To be sure, the conduct of defendant  and that of plaintiff  following the advent of Jorgenson's incapacitation belies any claim of special need for his services. Defendant contacted a number of outside shops in an attempt to engage someone else to perform the sheet metal work. Defendant admitted that the sheet metal work could still be performed, albeit through someone other than Jorgenson. Cf. 13 Am.Jur.2d, Building and Construction Contracts, § 63 (A contract to build a house does not involve such a personal relation that it may not be performed by persons other than the contracting parties thereto and, therefore, is not terminated by the death of one of the parties).
At best, defendant's claim is that of subjective impossibility which, as was previously stated, is no excuse for nonperformance. Duff v. Trenton Beverage Co., supra, 4 N.J. at 606.
Any claim by defendant that its obligation of performance should be excused, because to assume the higher cost of subcontracting the sheet metal work would have resulted in a marginal profit or even a loss, must fail. "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered." United States v. Spearin, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918), quoted in Hartford Fire Ins. Co. v. Riefolo Constr. Co., 81 N.J. 514, 524 (1980); see Newark v. North Jersey Dist. Water Supply Comm'n, 106 N.J. Super. 88, 105 (Ch.Div. 1968), *654 aff'd 54 N.J. 258 (1969); Schaefer v. Brunswick Laundry, Inc., supra, 116 N.J.L. at 272.
An anticipatory breach is a definite and unconditional declaration by a party to an executory contract  through word or conduct  that he will not or cannot render the agreed upon performance. Ross Systems v. Linden Dari-Delite, Inc., 35 N.J. 329, 340-341 (1961). If the breach is material  that is, if it "goes to the essence of the contract"  the nonbreaching party may treat the contract as terminated and commence suit forthwith. Id. at 341; Miller and Sons Bakery Co. v. Selikowitz, 8 N.J. Super. 118, 122 (App.Div. 1950); Young Travelers Day Camps, Inc. v. Felsen, 118 N.J. Super. 304, 310 (Cty.D.Ct. 1972).
Here, defendant's letter of May 3, 1984, and the simultaneous return of plaintiff's deposit constituted a clear and unequivocal declaration that the agreed upon performance would not be forthcoming. Defendant's expression of inability to perform the sheet metal work, without legal excuse, was a repudiation going to the "essence of the contract" and, thus, justified plaintiff in considering the contract at an end and reaching out to another subcontractor. See Ross Systems v. Linden Dari-Delite, Inc., supra, 35 N.J. at 341. Particularly in view of the admitted time constraints which plaintiff was burdened with under his contract with the Ocean County Center for the Arts, it cannot be said that he acted wrongfully, or unreasonably, in subcontracting the entire sign project to another company.
Plaintiff expected to disburse $12,800 toward the completion of the sign project under his contract with defendant; in the end, he paid $20,000 for the contemplated work as a consequence of defendant's breach. His damages are equal to the difference or $7,200. Judgment will be entered in that amount in favor of plaintiff and against defendant.
Plaintiff is hereby directed to submit an appropriate form of judgment.