Sherry Radack, Chief Justice
This dispute arises in the context of the oil and gas industry. The parties entered into a drilling contract that contained a "force majeure" clause. When one of the parties failed to perform its contractual obligations by the contract deadline, it sought to invoke force majeure protections. Litigation followed, and the trial court held that the force majeure clause was inapplicable as a matter of law. This appeal requires us to construe the parties' force majeure provision.
BACKGROUND
TEC Olmos ["Olmos"] entered into a farmout agreement with ConocoPhillips Company ["ConocoPhillips"] to test-drill land leased by ConocoPhillips in search of oil and gas. The contract set a deadline to begin drilling and contained a liquidated damages clause that required Olmos to pay $500,000 if it failed to begin drilling by the specified deadline.
The contract also contained a force majeure clause that listed several events that would suspend the drilling deadline, followed by a "catch-all" provision for events beyond the reasonable control of the party affected. The force majeure clause provides:
FORCE MAJEURE
Should either Party be prevented or hindered from complying with any obligation created under this Agreement, other than the obligation to pay money, by reason of fire, flood, storm, act of God, governmental authority, labor disputes, war or any other cause not enumerated herein but which is beyond the reasonable control of the Party whose performance is affected , then the performance of any such obligation is suspended during the period of, and only to the extent of, such prevention or hindrance, provided the affected Party exercises all reasonable diligence to remove the cause of force majeure. The requirement that any force majeure be remedied with all reasonable diligence does not require the settlement of strikes, lockouts or other labor difficulties by the Party involved.
(Emphasis added.)
The contract provided for $500,000 in liquidated damages to ConocoPhillips if Olmos failed to timely commence drilling operations. Because the parties "acknowledge[d] that actual damages would be difficult to ascertain," they agreed that "the amount of [liquidated damages] is reasonable, and that [liquidated damages] are not intended to be a penalty." Olmos's parent *180 company, Terrace Energy Company ["Terrace"], guaranteed Olmos's contractual obligations.
After the contract was executed, changes in the global supply and demand of oil caused the price of oil to drop significantly. The entity that Olmos intended to handle the financing for the ConocoPhillips drilling project backed out. Other sources of financing also became unavailable. Without financing for its project, Olmos informed ConocoPhillips that it was unable to meet the drilling deadline. Olmos attempted to invoke the force majeure clause to extend the drilling deadline.
ConocoPhillips disputed the applicability of the force majeure clause and sued both Olmos and Terrace [herein collectively, "Olmos" unless specified otherwise]. It sought a declaration that Olmos's claim did not constitute a valid force majeure event and that Terrace owed $500,000 in "maximum liquidated damages" under the "default" provision of the parties' agreement. ConocoPhillips also sought attorney's fees.
Olmos responded by asserting the affirmative defenses of force majeure and unenforceable penalty and bringing a counterclaim for repudiation.
ConocoPhillips moved for summary judgment, arguing that it established each element of its breach-of-contract claim as a matter of law and disproved Olmos's claims and affirmative defenses as a matter of law. It moved for attorney's fees under the contract and under Sections 37.009 and 38.001 of the Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009 (West 2015) (allowing award of attorney's fees in declaratory-judgment actions); 38.001(8) (West 2015) (allowing award of attorney's fees in breach-of-contract actions). The trial court granted ConocoPhillips summary judgment, and Olmos appeals.
PROPRIETY OF SUMMARY JUDGMENT
In three issues on appeal, Olmos challenges the propriety of the trial court's ruling on ConocoPhillips's motion for summary judgment, contending as follows:
1. Under a correct understanding of the law, fact issues precluded summary judgment on Defendants' invocation of the Farmout Agreement's "Force Majeure" clause.
2. Fact issues also precluded summary judgment regarding whether the "Maximum Liquidated Damages" sought by ConocoPhillips constituted an unenforceable penalty.
3. ConocoPhillips is not entitled to attorneys' fees against [Olmos] as a matter of law.
A. Standard of Review
We review a trial court's ruling on a motion for summary judgment de novo. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009).
When a plaintiff moves for summary judgment on its cause of action, it must prove each element of that cause of action. MMP, Ltd. v. Jones , 710 S.W.2d 59, 60 (Tex. 1986) (per curiam); Cleveland v. Taylor , 397 S.W.3d 683, 696-97 (Tex. App.-Houston [1st Dist.] 2012, pet. denied). To defeat a plaintiff's motion for summary judgment with an affirmative defense, the defendant must bring forth evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense.
*181 Brownlee v. Brownlee , 665 S.W.2d 111, 112 (Tex. 1984) ; Anglo-Dutch Petrol. Int'l, Inc. v. Haskell , 193 S.W.3d 87, 95 (Tex. App.-Houston [1st Dist.] 2006, pet. denied). The defendant is not required to prove its affirmative defense as a matter of law; raising a material fact issue is sufficient to defeat summary judgment. See Brownlee , 665 S.W.2d at 112 ; Anglo-Dutch Petrol. , 193 S.W.3d at 95.
B. Force Majeure
Olmos asserted as an affirmative defense to ConocoPhillips's breach-of-contract claim that the force majeure clause in the parties' farmout agreement was triggered when Olmos was unable to obtain project financing, thereby excusing its nonperformance. ConocoPhillips obtained summary judgment that the force majeure provision was inapplicable by arguing that force majeure protection is not available unless the triggering event is, first, unforeseeable and, second, something other than a mere economic hardship.
1. Rules of contract interpretation
In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document. Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am. , 341 S.W.3d 323, 333 (Tex. 2011) ; Frost Nat'l Bank v. L & F Distribs., Ltd. , 165 S.W.3d 310, 311-12 (Tex. 2005). We begin with the contract's language. Italian Cowboy , 341 S.W.3d at 333. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows that the terms were used in a technical or different sense. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 662 (Tex. 2005).
Sometimes contracts include terms that have common law significance. A term's common-law meaning will not override the definition given to a contractual term by the contracting parties. See Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 217-19 (Tex. 2003). The rules of contract interpretation require that the contracting parties' intent be determined based on the language included in their contract, not by "definitions not expressed in the parties' written agreements." Id. ; see Zurich Am. Ins. Co. v. Hunt Petrol.(AEC), Inc. , 157 S.W.3d 462, 466 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ("Regardless of its historical underpinnings, the scope and application of a force majeure clause depend on the terms of the contract."). However, we may consider common law rules to "fill in gaps" when interpreting force majeure clauses. Sun Operating Ltd. P'ship v. Holt , 984 S.W.2d 277, 283 (Tex. App.-Amarillo 1998, pet. denied).
Because foreseeability of force majeure events is rooted in the common law of the force majeure doctrine, the question presented is whether the trial court properly considered the foreseeability of changes in the oil and gas market when determining the applicability of the force majeure clause in this case.
2. Is Market Change a Force Majeure Event?
Olmos contends that the trial court erred as a matter of law in accepting ConocoPhillips's invitation to apply a "traditional conception of force majeure, [i.e., a showing of unforeseeability] rather than to apply the plain language of [the force majeure clause]." ConocoPhillips counters that a foreseeable event[1] cannot qualify as force majeure under the "catch-all" provision of this force majeure clause. We agree with ConocoPhillips for two reasons. First, it is unreasonable to interpret the "catch-all"
*182 provision as broadly as suggested by Olmos. Second, application of the ejusdem generis doctrine compels the conclusion that a decline in oil and gas prices is not the sort of event covered by the force majeure clause. We discuss each reason, respectively.
a. Foreseeability Properly Limits "Catch-all" Provisions
There has, indeed, been a debate regarding whether common-law notions of foreseeability have any place in the interpretation of modern-day force majeure clauses. The Third Circuit and the Fifth Circuit have reached differing results regarding whether, and under what circumstances, a showing of unforeseeability is required to show a force majeure event.
In Gulf Oil Corp., v. Fed. Energy Regulatory Comm'n , 706 F.2d 444, 454 (3rd Cir. 1983), the court required a showing of unforeseeability, even though the alleged force majeure event was specifically listed in the force majeure clause. The contract at issue in Gulf Oil involved a warranty to deliver a certain quantity of gas per day, and the force majeure clause specifically defined a force majeure event to include "breakage or accidents to machinery or lines of pipe, [and] the necessity for making repairs to or alterations of machinery or lines of pipe." Id. at 448 n.8. Focusing on the nature of warranty contracts, the Third Circuit concluded that, even though mechanical repairs were a listed force majeure event, the party claiming application of the force majeure clause also had to show that the mechanical repairs were "unforeseeable and infrequent." Id. at 454.
The Fifth Circuit reached the opposite result in Eastern. Air Lines v. McDonnell Douglas Corp. , 532 F.2d 957 (5th Cir. 1976). In Eastern Air Lines , McDonnell Douglas contracted to manufacture planes for Eastern by a certain date. Id. at 963. When McDonnell Douglas was unable to perform in a timely manner, it sought to invoke the force majeure clause, which excused delays occasioned by "any act of government, [or] governmental priorities." Id. at 992. McDonnell Douglas argued that "most of the delays were caused by the rapid military buildup occasioned by the war in Vietnam" and that "the Government asked the aviation industry to accord specific military projects priority over civilian production." Id. at 964. The Fifth Circuit noted that "[e]xculpatory provisions which are phrased merely in general terms have long been construed as excusing only unforeseen events which make performance impracticable." Id. at 990. However, because the parties had specifically addressed the risk that performance "would be delayed by governmental acts, priorities, regulations or orders," McDonnell Douglas did not have to also show that its defense was limited to unforeseeable events. Id. at 992.
However, this Court is not called upon to determine whether Gulf Oil or Eastern is correctly decided. Both of those cases involved the situation in which the alleged force majeure event was specifically listed in the force majeure clause. In this case, the alleged force majeure event-a downturn in the oil and gas market-is not listed in the force majeure clause. Instead, Olmos argues that it is applicable through the "catch-all" provision that includes "any other cause not enumerated herein but which is beyond the reasonable control of the Party whose performance is affected." Thus, the question we must decide is whether this "catch-all" provision includes events that are foreseeable, such as a fluctuation in the oil and gas market that affects a party's ability to obtain financing.
We believe that it does not, and we have held so in a similar case on at *183 least one other occasion. In Valero Transmission Co. v. Mitchell Energy Co. , 743 S.W.2d 658, 660 (Tex. App.-Houston [1st Dist.] 1987, no writ), Mitchell Energy agreed to sell, and Valero agreed to purchase and take, all gas produced from certain lands for a twenty-year period. The contract included a force majeure provision that excused performance "due to causes beyond [a party's] reasonable control." Id. at 663. Valero sought to invoke the force majeure clause to excuse its performance, arguing that "it had only slight control over the price it had to charge for its gas, and that neither party could control downstream market demand for gas at the high contract price." Id. A significant change in market price was not specifically listed as a force majeure event. See ids="11290897" index="28" url="https://cite.case.law/sw2d/743/658/#p660">id. This Court held that, because the downturn in the market was foreseeable, it was not an event that would trigger the force majeure clause. Id. at 663-64.
A force majeure clause does not relieve a contracting party of the obligation to perform, unless the disabling event was unforeseeable at the time the parties made the contract. An economic downturn in the market for a product is not such an unforeseeable occurrence that would justify application of the force majeure provision, and a contractual obligation cannot be avoided simply because performance has become more economically burdensome than a party anticipated.
Indeed, the uncertainty of future market prices is often the motivation for entering into a long-term contract. The primary purpose of a price agreement is to fix the price and consequently to avoid the risk of price fluctuation. Thus, a sudden or significant change in price, or the fact that one of the parties may gain or lose during a particular period of the contract, is not sufficient to constitute an extraordinary, unforeseeable event that would excuse performance under the force majeure clause.
Valero , 743 S.W.2d at 663-64 (citations omitted).
Valero is consistent with Kodiak 1981 Drilling Partnership v. Delhi Gas Pipeline, Corp. , 736 S.W.2d 715, 716, 720-21 (Tex. App.-San Antonio 1987, writ ref'd n.r.e.), which held that there was no unforeseeability requirement when a specified force majeure condition-a "partial or entire failure to gas supply or market"-occurred that excused performance. The San Antonio court quoted Eastern Air Lines in concluding that "when the promissor has anticipated a particular event by providing for it in a contract, he should be relieved of liability for the occurrence of such event regardless of whether it was foreseeable." Id. at 721 (quoting Eastern Air Lines , 532 F.2d at 992 ).
We agree that when parties specify certain force majeure events, there is no need to show that the occurrence of such an event was unforeseeable. This is consistent with the holdings in Eastern Air Lines and Kodiak . See also Perlman v. Pioneer Ltd. P'ship , 918 F.2d 1244, 1247-48 (5th Cir. 1990) (holding force majeure clause that specified "inability to obtain governmental permits" did not require showing unforeseeability when performance was hindered by inability to obtain permits without expensive hydrology testing); Rowan Cos. v. Transco Expl. Co., 679 S.W.2d 660, 664 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding, without discussing foreseeability, that parties had defined fire as force majeure event).
Such is not the case here, and those cases do not control the outcome of this case. An inability to obtain financing because of a downturn in the oil and gas industry is not listed as a force majeure event in the contract. The question thus, is *184 whether it is included in the "catch-all" provision. To require a showing of unforeseeability for a "catch-all" provision, such as the one here, is consistent with the cases Olmos cited.
Indeed, Eastern Air Lines acknowledges that "[e]xculpatory provisions which are phrased merely in general terms have long been construed as excusing only unforeseen events which make performance impracticable." 532 F.2d at 990. The court then discussed the doctrine of impracticality as it relates to force majeure as follows:
The rationale for the doctrine of impracticability is that the circumstance causing the breach has made performance so vitally different from what was anticipated that the contract cannot reasonably be thought to govern. However, because the purpose of a contract is to place the reasonable risk of performance on the promisor, he is presumed, in the absence of evidence to the contrary, to have agreed to bear any loss occasioned by an event which was foreseeable at the time of contracting. Underlying this presumption is the view that a promisor can protect himself against foreseeable events by means of an express provision in the agreement.
Therefore, when the promisor has anticipated a particular event by specifically providing for it in a contract, he should be relieved of liability for the occurrence of such event regardless of whether it was foreseeable.
E. Air Lines , 532 F.2d at 991-92 (internal citations omitted). The court concluded that, "[w]hen a risk has been contemplated and voluntarily assumed ... foreseeability is not an issue and the parties will be held to the bargain they made." Id. at 992. One commentator has summarized the Eastern Air Lines holding as follows: "If an event is foreseeable, parties should protect themselves through explicit provisions. If a party does so protect itself, it should not then have to bear the burden of proving that the event was unforeseeable." Jay D. Kelley, So What's Your Excuse? An Analysis of Force Majeure Claims , 2 TEX. J. OIL GAS & ENERGY L. 91, 104 (2007).
However, when, as here, the alleged force majeure event is not specifically listed-i.e., the party did not protect itself through an explicit provision-and the alleged force majeure event is alleged to fall within the general terms of the catch-all provision, it is unclear whether a party has contemplated and voluntarily assumed the risk. Thus, we find it appropriate to apply common-law notions of force majeure, including unforeseeability, to "fill the gaps" in the force majeure clause. See Sun Operating , 984 S.W.2d at 283. Because fluctuations in the oil and gas market are foreseeable as a matter of law, it cannot be considered a force majeure event unless specifically listed as such in the contract.
To dispense with the unforeseeability requirement in the context of a general "catch-all" provision would, in our opinion, render the clause meaningless because any event outside the control of the nonperforming party could excuse performance, even if it were an event that the parties were aware of and took into consideration in drafting the contract. For example, in this contract, the parties agreed that "[Olmos] will bear one hundred percent (100%) of the risks, costs, and expenses to drill and complete or plug and abandon all Earning Wells drilled in accordance with this agreement...." Reading the force majeure clause as Olmos requests us to would shift the risks associated with completing the well to ConocoPhillips despite the parties' clear intention that Olmos bear that risk. We agree with the commentator who stated that "it is generally not advisable to negate the foreseeability requirement with respect to the *185 catch-all definition inasmuch as this may result in an overly broad definition of force majeure." Kelley, supra, at 115.
Because there is no specific provision in the force majeure clause making a downturn in the oil and gas market a force majeure event, and a "catch-all" provision generally requires a showing of unforeseeability, which Olmos did not and cannot make, we hold that the trial court did not err in concluding, as a matter of law, that Olmos's failure to perform was not excused by the force majeure clause of the contract. See Kel Kim Corp. v. Cent. Mkts. , 70 N.Y.2d 900, 524 N.Y.S.2d 384, 519 N.E.2d 295, 296 (1987) (holding that, in absence of specific clause, nonperforming party's inability to obtain insurance because of liability insurance crisis did not fall within "catch-all" provision because problem could have been foreseen and guarded against in contract); Langham-Hill Petrol., Inc. v. S. Fuels Co. , 813 F.2d 1327, 1329-30 (4th Cir. 1987) (holding that "catch-all" provision did not excuse obligation to purchase fuel oil in wake of significant drop in oil prices because to do so would negate risks allocated by parties in fixed-price contract).
In this case, Olmos agreed to bear the risks and costs associated with drilling the wells. It was aware that it would need to obtain financing to be able to successfully perform its contractual duties. However, it took no steps to condition its performance on the availability of such financing, nor did it specifically define its inability to obtain financing as a force majeure event. Olmos could have protected itself from downturns in the oil and gas market by specifically addressing it in the contract, but it failed to do so. We will not read the "catch-all" provision of the force majeure clause so broadly that it relieves Olmos of liability because of a circumstance that it was aware of, but took no steps to specifically address in the contract.
b. The Doctrine of Ejusdem Generis
Our second reason for concluding that a market downturn is not a force majeure event involves application of the doctrine of ejusdem generis. When more specific items in a list are followed by a catch-all "other," the doctrine of ejusdem generis teaches that the latter must be limited to things like the former. Ross v. St. Luke's Episcopal Hosp. , 462 S.W.3d 496, 504 (Tex. 2015) ; In re Elliott , 504 S.W.3d 455, 475 & n.48 (Tex. App.-Austin 2016, original proceeding) (Pemberton, J., concurring) (applying ejusdem generis canon to definition of "legal action" in statute). That canon provides that when "general words follow an enumeration of two or more things, they apply only to ... things of the same general kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012); see also Hilco Elec. Coop., Inc. v. Midlothian Butane Gas Co. , 111 S.W.3d 75, 81 (Tex. 2003) (applying "rule of ejusdem generis, which provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation").
In Eastern Air Lines , the force majeure clause excused performance "due to causes beyond Seller's control and not occasioned by its fault or negligence, including but not being limited to" a list of specified events. 532 F.2d at 988. The court was invited, but declined, to apply the doctrine of ejusdem generis because, by using the term "including but not being limited to" in the clause, "the parties intended to excuse all delays coming within the general descripti *186 on regardless of their similarity to the listed excuses." Id. at 989.
In contrast, this case does not include language similar to "including but not being limited to" in the force majeure clause. Thus, the reasons for the Eastern Air Lines court's refusal to apply the doctrine of ejusdem generis are not present here.
Instead, this case is more like Seitz v. Mark-O-Lite Sign Contractors, Inc. , 210 N.J.Super. 646, 510 A.2d 319, 321-22 (N.J. Super. Ct. Law Div. 1986), in which the court considered whether a broad "catch-all" force majeure clause could be construed to apply to events different from those specifically enumerated in the clause. The court, applying the rule of ejusdem generis, concluded that "only events or things of the same general nature or class as those specifically enumerated" excused a party's non-performance. Id. at 321. As such, an employee's disability was not in the same class as labor strikes, fires, floods, earthquakes, war, or acts of God. Id. ; see also Kel Kim. , 524 N.Y.S.2d 384, 519 N.E.2d at 296-97 (holding plaintiff's inability to obtain insurance did not fall within "catch-all" because not similar to "labor disputes, inability to procure materials, failure of utility service, restrictive governmental laws or regulations, riots, insurrection, war, adverse weather, [or] Acts of God").
We hold, as a matter of law, that an economic downturn in the oil and gas industry is not like the other events specified in the contract as force majeure events. In this case, the specific terms "fire, flood, storm, act of God, governmental authority, labor disputes, war" are followed by the general term "any other cause not enumerated herein but which is beyond the reasonable control of the Party whose performance is affected." Applying the doctrine of ejusdem generis, the general phrase "any other cause not enumerated herein" must be limited to the types of events specified before, i.e., "fire, flood, storm, act of God, governmental authority, labor disputes, [&] war."
The specified events involve natural or man-made disasters (fires, floods, storms, act of God), governmental actions (governmental authority and war), and labor disputes. These events, while perhaps foreseeable, occur with such irregularity that planning for them and allocating the risks associated with such would be difficult absent a force majeure clause. However, changes in commodities markets and the resulting ability of a party to obtain financing occur regularly and could easily be dealt with in a specific contractual allocation of risks. Indeed, here, Olmos was aware that its ability to perform would be contingent on obtaining financing, but it did not condition its performance on such. In fact, the parties agreed to the contrary that Olmos would bear the risks associated with the drilling of the well, including, presumably, its ability to obtain financing.
3. Conclusion Regarding Force Majeure Event
Because events listed in the "catch-all" provision of this contract require a showing of unforeseeability, which Olmos did not do, and because a change in the oil and gas market making it impossible for Olmos to obtain financing is not like the other force majeure events listed in the contract, we conclude that Olmos, as a matter of law, did not raise a fact issue as to its affirmative defense. As such, the trial court properly granted ConocoPhillips' motion for summary judgment on its breach-of-contract claim.
Accordingly, we overrule Olmos's first issue on appeal.
C. Liquidated Damages
The contract provided for liquidated damages as follows:
*187 If [Olmos] fails to commence Drilling Operations on the first Earning Well by the expiration of the Primary Term, then [Olmos] will pay to [ConocoPhillips] the sum of $500,000.00 ("Maximum Liquidated Damages") and this Agreement terminates as to all Lease Acreage.
* * *
The Parties acknowledge that the payments set forth in this Article X are [ConocoPhillip]'s sole remedy for [Olmos]'s failure to drill and complete (or to plug and abandon as a dry hole, as the case may be) the first Earning Well as provided for in Article III. The Parties acknowledge that actual damages would be difficult to ascertain, the amount of Maximum Liquidated Damages and Liquidated Damages is reasonable, and that the Maximum Liquidated Damages and Liquidated Damages are not intended to be a penalty.
In its second issue on appeal, Olmos contends that the trial court erred in granting summary judgment because of its affirmative defense that the liquidated damages sought by ConocoPhillips were an unenforceable penalty.
In FPL Energy, LLC v. TXU Portfolio Management Co., the Texas Supreme Court discussed the enforceability of liquidated damages as follows:
The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions. See Stewart v. Basey , 150 Tex. 666, 245 S.W.2d 484, 486 (1952). In Phillips v. Phillips , we acknowledged this principle and restated the two indispensable findings a court must make to enforce contractual damages provisions: (1) "the harm caused by the breach is incapable or difficult of estimation," and (2) "the amount of liquidated damages called for is a reasonable forecast of just compensation." 820 S.W.2d 785, 788 (Tex. 1991) (citing Rio Grande Valley Sugar Growers, Inc. v. Campesi , 592 S.W.2d 340, 342 n.2 (Tex. 1979) ). We evaluate both prongs of this test from the perspective of the parties at the time of contracting.
426 S.W.3d 59, 69-70 (Tex. 2014). "While the question may require a court to resolve certain factual issues first, ultimately the enforceability of a liquidated damages provision presents a question of law for the court to decide." Id. at 70. The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof. Garden Ridge, L.P. v. Advance Int'l., Inc. , 403 S.W.3d 432, 438 (Tex. App.-Houston [14th Dist.] 2013, pet. denied) (citing Phillips , 820 S.W.2d at 789 ; TEX. R. CIV. P. 94 ).
Olmos does not challenge the first prong of the two-prong test. Instead, it argues that a fact issue exists on whether, given the market conditions at the time of breach, ConocoPhillips's actual damages from non-drilling bear any relationship to the $500,000 specified in the contract. Specifically, Olmost argues that "the parties' 'estimate' of ConocoPhillips' damages [at the time the parties agreed to the liquidated damage provision] does not tell us the amount of its 'actual damages incurred' today."
However, we must determine whether a liquidated-damage provision is a reasonable forecast of actual damages by considering the time of contracting, not the time of breach. See FPL Energy , 426 S.W.3d at 71 ("We view the reasonableness of the forecast from the time of contracting." E.g., Mayfield v. Hicks , 575 S.W.2d 571, 576 (Tex. Civ. App.-Dallas 1978, writ ref'd n.r.e.) ; accord RESTATEMENT (SECOND) OF CONTRACTS § 356 cmt. b (1981) (identifying time of making contract *188 as moment to measure reasonableness of anticipated loss) ). Thus, the effect of the industry-wide drop in the price of oil after the parties signed the contract on ConocoPhillips's actual damages is irrelevant. Even though, according to Olmos, ConocoPhillips's anticipated return on the $4.8 million drilling project was lowered to "essentially zero," the subsequent change in oil prices does not mean that the liquidated damages provision was unreasonable at the time it was agreed to by the parties. Because Olmos's evidence on the reasonableness of the liquidated-damages provision focuses on events occurring after the signing of the contract, it does not raise a fact issue on its unenforceable penalty affirmative defense.
Accordingly, we overrule issue two.
D. Attorney's Fees
In its third issue on appeal, Olmos contends that the trial court erred by rendering joint and several liability against Olmos and Terrace for attorney's fees. Specifically, Olmos contends that, while Terrace can be liable for attorney's fees, Olmos, a limited liability company, cannot. See TEX. CIV. PRAC. & REM. CODE § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation ... if the claim is for ... an oral or written contract").
We agree. Olmos is not an individual or a corporation; it is a limited liability company.[2] "Under the plain language of section 38.001, a trial court cannot order limited liability partnerships (L.L.P.), limited liability companies (L.L.C.), or limited partnerships (L.P.) to pay attorneys' fees." Varel Int'l Indus., L.P. v. PetroDrillbits Int'l, Inc. , No. 05-14-01556-CV, 2016 WL 4535779, at *7 (Tex. App.-Dallas Aug. 30, 2016, pet. denied) (mem. op.); see also CBIF Ltd. P'ship v. TGI Friday's Inc. , No. 05-15-00157-CV, 2017 WL 1455407, at *25 (Tex. App.-Dallas Apr. 21, 2017, pet. filed) (mem. op.); Choice! Power, LP v. Feeley , 501 S.W.3d 199, 214 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (holding § 38.001 does not permit recovery against limited partnership); Alta Mesa Holdings, L.P. v. Ives , 488 S.W.3d 438, 455 (Tex. App.-Houston [14th Dist.] 2016, pet. denied) (holding section 38.001 does not authorize recovery of attorney's fees in breach of contract action against limited liability company); Hoffman v. L & M Arts , No. 3:10-CV-0953-D, 2015 WL 1000838, at *9-10 (N.D. Tex. Mar. 6, 2015) (holding a limited liability company is not an individual or corporation for purposes of § 38.001 ).
Nevertheless, ConocoPhillips alleges that it was also entitled to recover attorney's fees under section 37.009 of the Texas Civil Practices and Remedies Code[3] "because the declaratory and breach of contract claims were independent. Specifically, ConocoPhillips alleges that the breach-of-contract claim was about Olmos's failure to timely commence drilling operations, while the declaratory judgment action was based on the parties' dispute about their rights and obligations under the farmout agreement. We disagree with ConocoPhillips's characterization of the breach-of-contract and declaratory-judgment actions as "independent."
ConocoPhillips sought a declaration that Olmos's "claim of a force majeure *189 does not constitute a valid force majeure under the Farmout" and that "the Farmout terminated at the end of the Primary Term on September 28, 2015 due to [Olmos's] failure to drill an Earning Well." Both requested declarations involve a determination of whether Olmos breached the farmout agreement by not drilling a well. "[W]hen a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under [ § 37.009 ] would frustrate the limits Chapter 38 imposes on such fee recoveries." MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 670 (Tex. 2009). "[A]n award of attorney's fees under [ § 37.009 ] is unavailable if the claim for declaratory relief is merely incidental to other claims for relief." Jackson v. State Office of Admin. Hearings , 351 S.W.3d 290, 301 (Tex. 2011).
Because ConocoPhillips's breach-of-contract claim and declaratory-judgment claim are not independent claims, we sustain Olmos's third issue.
CONCLUSION
There being no statutory basis for assessing attorney's fees against Olmos, we modify the judgment inasmuch as it makes Olmos jointly and severally liable with Terrace for the attorney's fees awarded to ConocoPhillips. We affirm the judgment as modified.

Both parties agree that fluctuation in the commodities markets is a foreseeable event.

See Tex. Bus. Orgs. Code § 101.001(3) (West 2012).

See Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under [the Declaratory Judgment Act], the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").