

# NUMBERS 13-20-00492-CV, 13-21-00085-CV AND 13-21-00425-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

SPEEDY CAR WASH, INC. AND
CARLOS A. GUERRA, GUARANTOR,                    Appellants,

v.

GERALD SHER, SUSAN SHER,
SPECIALTY CUISINE, INC. D/B/A
ISLE WASH, AND ANDREW SHER,
TRUSTEE,                                        Appellees.

---

On appeal from the 103rd District Court
of Cameron County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Justice Peña

Appellees Gerald Sher, Susan Sher, Specialty Cuisine, Inc. d/b/a Isle Wash, and Andrew Sher, trustee (the Sellers) sold three tracts of real property, one containing a car wash business (the property), to appellants Speedy Car Wash, Inc. and Carlos A. Guerra, Guarantor (the Purchasers). The Sellers, who financed the transaction, later sued the Purchasers, seeking declaratory relief and alleging breach of contract and fraud claims. During the pendency of the litigation, the Sellers conducted a non-judicial foreclosure on the property pursuant to a Rule 11 agreement, and they later pleaded a claim for deficiency. The trial court granted partial summary judgment in favor of the Sellers on their deficiency claim and severed the judgment into a separate cause of action. Later, the trial court granted summary judgment in favor of the Sellers on their claims concerning the Purchasers' post-foreclosure failure to vacate the property. The Purchasers appeal the two summary judgments, as well as a post-judgment order authorizing a court-appointed receiver to sell real property in satisfaction of the judgment.[1] We affirm the trial court's judgments in appellate cause numbers 13-20-00492-CV and 13-21-00085-CV. We dismiss as moot appellate cause number 13-21-00425-CV.

## I. BACKGROUND

### A. The Sale

The subject property is located in South Padre Island, Cameron County, Texas. The Purchasers bought the property for $977,000, making a down payment of $100,000, with the remainder being seller-financed. The Purchasers held a special warranty deed

---

[1] In appellate cause number 13-20-00492-CV, the Purchasers appeal the partial summary judgment on the Sellers' deficiency claim. Appellate cause number 13-21-00085-CV concerns the Purchasers' appeal from the final summary judgment in the original trial court cause. In appellate cause number 13-21-00425-CV, the Purchasers appeal the trial court's post-judgment order authorizing the receiver sale. We address the appeals together in this consolidated memorandum opinion for the sake of judicial efficiency.

with a vendor's lien subject to a deed of trust and a real estate lien note. The note, in the amount of $877,000, required monthly payments of $5,785.90 to the Sellers. The note provided that in the event of default, the Sellers could opt to accelerate the note, causing the unpaid principal balance and accrued interest to become immediately due and payable. The Sellers disclaimed making "any warranties or representations . . . of any kind or character, . . . including operating history or projections [and] valuation[.]" Relatedly, the Purchasers disclaimed relying on any such representations, asserting that they conducted their own independent investigation.

Approximately five months later, the Purchasers informed the Sellers that they were unable to meet their payment obligations due to less-than-expected revenue from the car wash business and that they wished to sell two of the three tracts. The Purchasers requested a partial release of the Sellers' deed of trust and lien covering those tracts to facilitate the sale. The Sellers declined, and the Purchasers threatened litigation.

**B.      Partial Summary Judgment Proceedings**

The Sellers preempted the Purchasers' threat by filing suit seeking declaratory relief that the note and deed of trust did not require them to grant a partial release of the secured collateral. The Sellers also sought a declaration that the Purchasers waived any claim that they relied on representations by the Sellers pursuant to the disclaimers contained in the parties' agreement. The Sellers alleged breach of contract and anticipatory breach of contract claims based on the Purchasers' threat of litigation and their intention not to continue making timely monthly payments. Finally, the Sellers alleged that the Purchasers committed fraud and fraudulent inducement.

3

Fifteen days after filing suit, the Sellers notified the Purchasers that they were accelerating the unpaid principal balance and accrued interest on the note due to the Purchasers' default. The Sellers subsequently notified the Purchasers of a scheduled non-judicial foreclosure sale.

Before the scheduled foreclosure, the Purchasers filed a "Counterclaim, Verified Petition and Affirmative Defenses," asserting various claims and defenses.[2] The Sellers filed a Rule 91a motion to dismiss the Purchasers' counterclaims, alleging that the claims had no basis in law. *See* TEX. R. CIV. P. 91a. Subsequently, the trial court granted the Sellers' Rule 91a motion to dismiss in its entirety.[3]

The parties then filed a Rule 11 agreement, *see* TEX. R. CIV. P. 11, containing the following pertinent terms:

2. [The Sellers] shall agree to postpone the foreclosure sale currently set for February 4, 2020[,] provided the [Purchasers] strictly comply with all of the following:

   a. [The Purchasers] shall make all loan payments current and due, that is, December 2019 and January 2020, in the amount of $5,785.30 for each month totaling $11,570.60 on or before 5:00 PM CST Monday, February 3, 2020.

   b. The loan payments under 2(a) hereinabove shall be made by wire transfer or direct deposit, certified check, bank draft, or other verifiable manner and shall be made payable directly to the [Sellers].

   c. [The Purchasers'] failure to timely make the loan payments as required by 2(a) and 2(b) hereinabove shall authorize [the Sellers] to proceed with the foreclosure sale scheduled for Tuesday, February 4, 2020 at 10:00 AM CST . . . without delay or interference by or on behalf of [the Purchasers].

---

[2] The Purchasers previously filed a special appearance and general denial as well as an application for a temporary restraining order. Those pleadings are not relevant to this appeal.

[3] The trial court severed the Purchasers' counterclaims into a separate cause of action. The Purchasers did not appeal the dismissal of those claims.

d. [The Purchasers] shall refinance and pay [the Sellers] the accelerated debt in its entirety pursuant to all conditions and terms as set out in the Loan Documents including but not limited to all principal, interest, penalties, fees, costs and expenses, including reasonable attorney fees on or before March 1, 2020 at 5:00 PM CST. . . .

e. [The Purchasers'] failure to refinance and timely pay as required by 2(d) hereinabove shall authorize [the Sellers] to proceed with foreclosure on Tuesday, March 3, 2020 at 10:00 AM CST on the steps of the Cameron County Courthouse in Brownsville, Cameron County, Texas without any further required notice, other than notice of the foreclosure sale for March 3, 2020, required under the Texas Property Code, or judicial review and without delay or interference by or on behalf of [the Purchasers].

The Purchasers were unable to refinance the loan by the agreed deadline, and the March 3, 2020 non-judicial foreclosure proceeded. At the sale, the Sellers reacquired the property for $800,000. They then filed a supplemental petition seeking a deficiency judgment. The Sellers also sought attorney's fees associated with conducting the foreclosure. The Sellers brought an additional claim for breach of the Rule 11 agreement, alleging the Purchasers refused to peaceably vacate the property. Finally, the Sellers brought a claim for abuse of process and malicious civil prosecution based on the Purchasers having filed a Rule 202 proceeding seeking pre-suit discovery in El Paso County, Texas. *See* TEX. R. CIV. P. 202 ("Deposition Before Suit or to Investigate Claims").

The Sellers filed a motion for partial summary judgment on their deficiency claim. They sought a judgment in the amount of $95,588.47 pursuant to the terms of the real estate lien note, deed of trust, and commercial loan security agreement. That figure represented the difference between the foreclosure sale price and the debt owed on the date of foreclosure. The Sellers also maintained they were entitled to $94,044.78 in attorney's fees and expenses associated with the foreclosure. The Sellers further argued

that the foreclosure sale was properly conducted pursuant to the parties' Rule 11 agreement. The Sellers' motion was supported by the transaction agreements, the real estate lien note, a special warranty deed with vendor's lien, a deed of trust, the Rule 11 agreement, foreclosure notices, and the affidavits of the Sellers' counsel. The Sellers also filed a motion for equitable relief, requesting "that the gross revenues generated by [the Purchasers] from [the property] be paid into the registry of the Court until such time as possession is restored to [the Sellers]."

The Purchasers filed a response to the motions, contending that they entered into the Rule 11 agreement only "given the proviso that the financial information would be forthcoming" and that the Rule 11 agreement is void because the Sellers did not provide such information. The Purchasers supported the motion with the affidavit of Carlos Guerra.

The Sellers replied, noting that the Rule 11 agreement contained no provision requiring the Sellers to provide financial information.[4]

The trial court held a hearing on the Sellers' motions for partial summary judgment and for equitable relief. After hearing arguments, the trial court orally pronounced it was granting the partial summary judgment in part—awarding attorney's fees and expenses associated with the foreclosure. However, the trial court found "there is no deficiency" because the Sellers "do have the property back." The trial court also orally pronounced that it was granting the Sellers equitable relief and ordered the Purchasers to vacate the property. The trial court then signed an order that: granted the motion for partial summary

---

[4] The Sellers also claimed that the trial court dismissed the Purchasers' affirmative defenses. We disagree. Whether the existence of these affirmative defenses precludes summary judgment is an issue we discuss below.

6

judgment "in part"; awarded the Sellers a $95,588.47 "judgment for deficiency, reasonable and necessary attorney fees, and expenses incurred as of March 3, 2020,"[5] along with post-judgment interest, and costs; and ordered the Purchasers to vacate the property. The trial court severed the partial summary judgment into a separate cause, leaving the Sellers' post-foreclosure claims remaining.

## C.    Final Summary Judgment

After the Sellers obtained possession of the property, they filed a motion for final summary judgment on their post-foreclosure breach of contract and trespass claims. The Sellers argued that the Purchasers: (1) breached the transaction agreements by failing to pay 2019 property taxes; (2) breached the Rule 11 agreement by clouding title and interfering with the Sellers' lawful attempts to regain possession of the property; and (3) trespassed upon the property after foreclosure. The Sellers sought damages for the unpaid property taxes, lost use or rent of the property, and attorney's fees and costs incurred post-foreclosure. The Sellers explained that despite affixing notices on the premises for the Purchasers to vacate in March of 2020, they did not vacate until December 30, 2020, when the Cameron County Sheriff's Office executed a writ of possession. The Sellers' motion was supported by the transaction agreements, foreclosure sale deed, counsels' affidavits, records pertaining to the Purchasers' legal efforts to retain possession of the property post-foreclosure, and affidavit testimony concerning the lost rental value for the property.

---

[5] This award corresponds with the Sellers request for a deficiency judgment—not the attorney's fees and costs associated with the foreclosure pursuant to the trial court's oral pronouncement. To the extent there is a conflict between the oral pronouncements and the judgment, the matters set forth in the written judgment control. *See In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re JDN Real Estate–McKinney, L.P.*, 211 S.W.3d 907, 914 n.3 (Tex. App.—Dallas, 2006, orig. proceeding).

The Purchasers filed a response, arguing that there existed a genuine issue of material fact as to the Sellers' causes of action. The Purchasers again alleged that the Sellers failed to provide certain financial documents in violation of the transaction agreements, which they argue were incorporated into the Rule 11 agreement. The Purchasers' response was supported by various emails between the parties' counsel throughout litigation.

The Purchasers later filed a supplemental response reiterating that the Sellers breached the parties' Rule 11 and loan agreements by failing to provide financial documents. The Purchasers maintained they were excused from performance due to the Sellers' breach. The Purchasers attached the affidavit of Lidia Guerra, who purported to be a financial adviser for the Purchasers. Lidia averred that the Sellers provided three years of profit statements prior to closing. She claimed that upon purchasing the property, the Purchasers discovered the car wash business was not generating the expected profit. Lidia stated that this caused the Purchasers to request further financial documents, which the Sellers failed to provide. Lidia claimed that the Sellers were required to provide further financial documents after closing pursuant to the following clause in the transaction documents: "Seller agrees to execute and deliver any additional documents and to perform any additional acts reasonably necessary or appropriate to carry out the intent of this bill of sale in transferring the Purchased Assets to Buyer."

The trial court granted the Sellers' motion for final summary judgment, awarding: $19,243.65 for unpaid property taxes; $40,409.25 for loss of use or rentals; $125,191.49 in attorney's fees and expenses incurred after the non-judicial foreclosure; and post-judgment interest.

**D.    Post-Judgment Proceedings**

The Sellers filed an application for post-judgment turnover and appointment of receiver. The trial court granted the application, and the court-appointed receiver later seized possession of real property owned by the Purchasers and located in El Paso, Texas (El Paso property). The receiver also seized cash from the Purchasers' bank accounts. The receiver later obtained the trial court's authorization to sell the El Paso property, and he subsequently did so.

**E.    Appeals and Motions**

The Purchasers perfected appeals from all three trial court judgments,[6] and the parties have filed several motions with this Court that will be disposed of in this memorandum opinion. In their appeals, the Purchasers argue that the trial court: (1) erred in granting partial summary judgment and final summary judgment because the Sellers' motions did not address the Purchasers' affirmative defenses, and because the Purchasers raised a fact issue concerning the defenses of fraud and estoppel; and (2) abused its discretion by granting the receiver authority to sell the El Paso property. The Purchasers have filed a motion to set aside the receiver sale, or in the alternative, a petition for writ of mandamus seeking such relief.[7] The Sellers, meanwhile, have filed a

---

[6] The Purchasers have filed a motion to determine jurisdiction in appellate causes 13-20-00492-CV and 13-21-00085-CV. The Purchasers note in the motion that they failed to reference the proper cause number in their notice of appeal from the trial court's partial summary judgment, but they cited the correct order being challenged. The Purchasers argue that this constituted a bona fide attempt to invoke appellate jurisdiction. We agree that the Purchasers have invoked appellate jurisdiction in each appellate cause. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 261 (Tex. 2022) (explaining that a document that is defective but timely filed invokes appellate jurisdiction). We dismiss the Purchasers' motion to determine jurisdiction as moot.

[7] The Sellers have filed a motion to strike a supplemental exhibit filed in support of the Purchasers' motion to set aside the receiver sale. The court-appointed receiver has filed a motion to join and adopt the Sellers' motion to strike. We grant both motions. The supplemental exhibit is not a part of the record on appeal. Documents filed with the Court, "but not appearing in the appellate record, cannot be considered

motion to dismiss as moot the Purchasers' appeal from the trial court's order authorizing the receiver sale.

## II. SUMMARY JUDGMENT

### A. Standard of Review

We review the trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A plaintiff movant must conclusively prove all essential elements of its cause of action as a matter of law. *Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021). If the plaintiff does so, then the burden shifts to the defendant "to present to the trial court any issues or evidence that would preclude summary judgment." *Duncan v. Hindy*, 590 S.W.3d 713, 719 (Tex. App.—Eastland 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

"If the non-movant relies on affirmative defenses to defeat summary judgment on the movant's cause of action, the non-movant must do more than merely plead the affirmative defense." *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 346–47 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). "[T]he defendant must bring forth evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense." *TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 180–81 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Brownlee v. Brownlee*, 665

---

on appellate review." *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 773 (Tex. App.—El Paso 2015, no pet.).

S.W.2d 111, 112 (Tex. 1984)). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Therefore, "any issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence." *Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 774 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)).

When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

## B.    Analysis

The Purchasers do not contend on appeal that the Sellers failed to meet their initial summary judgment burden to conclusively establish their claims as a matter of law. *See* TEX. R. CIV. P. 166a(c). Therefore, we do not address the issue. *See Brumley v. McDuff*, 616 S.W.3d 826, 830 (Tex. 2021) ("With the exception of fundamental errors, a court of appeals must not reverse a trial court's judgment in the absence of properly assigned error."). Rather, the Purchasers argue that the summary judgment was improper because (1) the Sellers' motions failed to address the Purchasers' affirmative defenses, and (2) the Purchasers "raised a fact question concerning the affirmative defenses of fraud and estoppel" in their responses to each motion.

First, the Sellers carried no burden to negate the Purchasers' affirmative defenses in their motions. "[A] plaintiff is not required to move for summary judgment on the

11

defendant's affirmative defenses and has no obligation to negate those defenses." *Marx v. FDP, LP*, 474 S.W.3d 368, 377–78 (Tex. App.—San Antonio 2015, pet. denied) (first citing *Brownlee*, 665 S.W.2d at 112; and then citing *Woodside v. Woodside*, 154 S.W.3d 688, 691 (Tex. App.—El Paso 2004, no pet.)); *see also Wise v. Luke Dev., LLC*, No. 04-12-00477-CV, 2013 WL 4483381, at *2 (Tex. App.—San Antonio Aug. 21, 2013, no pet.) (mem. op.) ("The defendant's mere pleading of an affirmative defense does not prevent the rendition of summary judgment for a plaintiff who has conclusively established each element of its cause of action as a matter of law.").

Second, the Purchasers did not expressly raise their affirmative defenses in the trial court. In their response to both motions for summary judgment, the Purchasers argued that a fact issue existed regarding the Sellers' claims for breach of the parties' agreements because the Sellers breached their obligations to provide certain financial information. However, the Purchasers made no arguments regarding the affirmative defenses. The Purchasers did not reference their affirmative defenses at all, much less identify their elements.[8] Therefore, the Purchasers failed to expressly present their affirmative defenses as a basis for denying the Sellers' motions. *See* TEX. R. CIV. P. 166a(c). *Mercier*, 214 S.W.3d at 775 ("Because Mercier failed to expressly present the affirmative defenses in his written response, . . . his response raised no fact issues precluding summary judgment."); *see also Haley v. Beneficial Fin. I Inc.*, No. 13-18-

---

[8] As set out above, the Purchasers summary judgment responses relied on their contention that the Sellers breached the parties' agreement by failing to provide unspecified financial documents long after the sale was completed. In support of their argument, the Sellers relied solely on the following contract clause: "Seller agrees to execute and deliver any additional documents and to perform any additional acts reasonably necessary or appropriate to carry out the intent of this bill of sale in transferring the Purchased Assets to Buyer." Even if we were to construe this as raising an affirmative defense, the Purchasers do not re-urge this argument on appeal. At any rate, we note that this provision imposes no obligation on the Sellers to provide the Purchasers further documents after delivery of the "Purchased Assets."

00058-CV, 2019 WL 2709015, at *5 (Tex. App.—Corpus Christi–Edinburg June 28, 2019, no pet.) (mem. op.) ("[B]ecause the [non-movants] failed to expressly raise their affirmative defenses in their responses to [plaintiff's] motion for summary judgment, they were not preserved for our review."). We overrule the Purchasers' sole issue in its appeal from both summary judgments.

### III. RECEIVER'S SALE

In their appeal from the trial court's post-judgment order, the Purchasers argue that the trial court abused its discretion by granting the court-appointed receiver authority to sell the El Paso property. Particularly, the Purchasers argue that, prior to the order, they superseded the judgments by posting sufficient bond. The Sellers disagree that the bonds were sufficient. The Sellers further argue that the issue is moot because the property has already been sold, and they have filed a motion to dismiss the appeal on that basis. The Purchasers have filed their own motion to set aside the sale.

### A. Pertinent Facts

On August 13, 2021, the Sellers filed an application for post-judgment turnover and appointment of receiver. On September 15, 2021, the trial court appointed a receiver and ordered the Purchasers to turn over all non-exempt assets. On September 21, 2021, the receiver seized the Purchasers' El Paso property. Three days later, the receiver sought authorization to sell the property. The Purchasers then filed a motion to terminate the receivership, contending they filed supersedeas bonds on September 27, 2021, that were sufficient to supersede the judgments. The trial court clerk approved the bonds, which were issued on behalf of Guerra only. The Sellers filed a response contending that the bond amounts did not cover court costs and interest and did not include Speedy Car

13

Wash, the party that owned the El Paso property. On October 18, 2021, the Purchasers filed their first amended supersedeas bonds. One of the amended bonds was made payable to an unrelated third party and it was in the amount of only $10,000. These amended bonds had not been approved by the trial court clerk as of that date. *See* TEX. R. APP. P. 24.1(b)(2) ("To be effective a bond must be approved by the trial court clerk.").

On October 19, 2021, the trial court held a hearing on the pending motions. At the hearing, the receiver represented that that the commercial lien holder of the El Paso property had agreed to allow the receiver to take possession and sell the property to avoid foreclosure. The trial court entertained arguments from both parties regarding the sufficiency of the supersedeas bonds. From the bench, the trial court granted the receiver's application to sell the El Paso property, while denying the Purchasers' motion to terminate the receivership. That same day the trial court signed an order authorizing the sale.

At 6:38 p.m. the next day, the Purchasers filed an emergency motion for stay and to determine sufficiency of the bonds in this Court. *See* TEX. R. APP. P. 24.4(a), (c). On October 21, we granted a temporary stay of the enforcement of the partial and final summary judgments, and we requested that the Sellers file a response to the motion. Unbeknownst to the Purchasers, and before they filed their emergency motion, the receiver previously executed a special warranty deed on October 20, 2021, at 1:00 p.m. that was recorded in the real property records later that day at 3:18 p.m. The title company wired the receiver the sale proceeds the next day.

On October 29, 2021, the trial court clerk approved the Purchasers' amended supersedeas bonds. We later issued an order abating the appeals and instructing the trial

14

court to rule expressly on the sufficiency of the security in the first instance. We directed the trial court to hold a hearing and to issue findings and conclusions regarding the supersedeas issue. Before the trial court could hear the matter, the parties filed a joint stipulation agreement with this Court in which they stipulated that, as of October 29, 2021, the supersedeas bonds were sufficient to supersede the judgments and that enforcement of the judgments was suspended. As a result, we lifted our stay and reinstated the appeals.

## B.      Mootness

The Sellers have filed a motion to dismiss this appeal as moot. They contend that the receiver's sale moots any issues pertaining to the trial court's order authorizing the sale. The Purchasers respond that there remains a live controversy because the receiver's sale is void and may be set aside.

"Under the Texas Constitution's separation-of-powers doctrine, courts lack jurisdiction to issue an advisory opinion, the 'distinctive feature' of which is that it 'decides an abstract question of law without binding the parties.'" *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022) (quoting Tex. *Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)); *see* TEX. CONST. art. II, § 1. Therefore, an appellate court lacks jurisdiction to issue an opinion on a moot controversy. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.* (citations omitted). In

other words, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.*

"When a party appeals an order appointing a receiver or authorizing sale of certain property and the property has been sold, the appeal of the order becomes moot." *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Beard v. Beard*, 49 S.W.3d 40, 71 (Tex. App.—Waco 2001, pet. denied)). Here, the receiver has completed the sale authorized by the trial court. As a result, any determination that the trial court erred in authorizing the sale would have no effect as there is no longer a controversy to resolve. *See Heckman*, 369 S.W.3d at 162. Therefore, this appeal is moot, and we must dismiss the appeal for lack subject-matter jurisdiction. *See Alsobrook v. MTGLQ Inv'rs, LP*, 656 S.W.3d 394, 395 (Tex. 2022) (holding that the appeal of a foreclosure order was mooted by the sale of the property at issue) (per curiam); *Moss-Schulze v. EMC Mortg. Corp.*, 280 S.W.3d 876, 877 (Tex. App.—El Paso 2008, pet. denied) (same); *see also Bass v. Bass*, No. 05-15-01362-CV, 2016 WL 1703007, at *1 (Tex. App.—Dallas Apr. 27, 2016) (mem. op.) ("Because the property that was the subject of the appealed interlocutory order appointing a receiver has been sold, the appeal from that order is now moot."). Accordingly, we grant the Sellers' motion to dismiss this appeal. However, as explained below, this does not moot the Purchasers' motion to set aside the sale filed in the summary judgment appeals, to the extent the motion presents arguments for voiding the sale that do not assail the trial court authorization order. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) (explaining that if only some claims or issues become moot, the case remains live as to other claims or issues that are not moot).

16

## C.    Was our Stay Violated?

In their motion to set aside the sale, the Purchasers allege that the sale is void because it occurred after this Court's stay order issued.[9] Actions taken in violation of an appellate stay order are void. *In re Bates*, 429 S.W.3d 47, 53 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *see Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex. App.—Dallas 2007, pet. denied) (explaining that a sale of real property that violates a bankruptcy court's automatic stay "is void and passes no title"). Therefore, whether the sale is void for violating our stay order presents a live controversy. *See Heckman*, 369 S.W.3d at 162; *see also Welch v. Specialized Loan Serv., LLC*, No. 01-21-00704-CV, 2023 WL 2249202, at *4 n.3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet. h.) (mem. op.) (concluding that a claim that a foreclosure sale was void for violating a temporary restraining order was not mooted by the property's sale).

Here, the record establishes that the sale was completed before the Purchasers sought emergency appellate relief, and before our stay order was issued. *See Thompson v. Six Shooter Enters., LLC*, 633 S.W.3d 107, 114 (Tex. App.—El Paso 2021, no pet.) ("In Texas, it is settled that title to real property will vest upon execution and delivery of the deed."). Before the Purchasers sought emergency relief, the receiver had executed and

---

[9] The Purchasers also argue that the sale should be set aside because their supersedeas bonds were sufficient to supersede the judgment. However, this argument was presented to and rejected by the trial court when it issued its order authorizing the sale. For the reasons previously discussed, any issues concerning whether the trial court erred in authorizing the sale are moot. At any rate, we note that the bonds approved by the trial court clerk superseded the judgment only as to Guerra, individually. The El Paso property was owned by Speedy Car Wash. At the time of the sale, there were no bonds in place, approved by the trial court clerk, that would prohibit the receiver from enforcing the judgment as to Speedy Car Wash. *See Fortune v. McElhenney*, 645 S.W.2d 934, 935 (Tex. App.—Austin 1983, no writ) (holding that each joint and severally liable judgment debtor must file a sufficient supersedeas bond, either separately or jointly); *see also Jackson Walker, LLP v. Kinsel*, No. 07-13-00130-CV, 2014 WL 720889, at *3 (Tex. App.—Amarillo Feb. 14, 2014, no pet.) (mem. op.) (explaining that "each judgment debtor should be obligated to supersede the judgment by providing security in an amount equal to his respective liability imposed by the decree").

recorded a special warranty deed. *See id.* ("The recording . . . establishes a prima facie case of delivery and the accompanying presumption that the grantor intended to convey the land according to the terms of the deed."). The Purchasers argue that there is evidence the title company wired the proceeds of the sale after our stay issued, a fact the Sellers dispute. However, this fact is immaterial because the receiver completed all necessary actions to finalize the sale prior to our order, and he took no actions following our order that must be voided for violating the stay. We deny the Purchasers' motion to set aside the sale. We dismiss as moot the Purchasers' alternative request that we treat the motion as a petition for writ of mandamus.

### IV.    CONCLUSION

We affirm the trial court's judgments in appellate cause numbers 13-20-00492-CV and 13-21-00085-CV. We dismiss as moot appellate cause number 13-21-00425-CV.

L. ARON PEÑA
Justice

Delivered and filed on the
11th day of May, 2023.